[No. B228314. Second Dist., Div. Two. Feb. 7, 2012.]

PER A. MAASO, an Incompetent Person, etc., et al., Plaintiffs and Appellants, v.
STEPHEN SIGNER, Defendant and Appellant.

**COUNSEL**

Steven B. Stevens; Blumberg Law, John P. Blumberg and Ave Buchwald for Plaintiffs and Appellants.

Schmid & Voiles, Susan H. Schmid and Denise H. Greer for Defendant and Appellant.

OPINION

**DOI TODD, Acting P. J.**—Per A. Maaso, by and through his guardian ad litem, George Richard Martin, sued Stephen Signer, M.D., for medical malpractice. The case was ordered to binding contractual arbitration before a panel of three arbitrators. Two of the three arbitrators found that Maaso failed to prove causation, and an arbitration award was issued in favor of Signer. The trial court vacated the award on the ground that it was procured by "undue means," based on ex parte contact between Signer's party arbitrator and the neutral arbitrator while the award was pending, and ordered the case back to arbitration before a different neutral arbitrator. The second arbitration resulted in a monetary award in favor of Maaso. The award exceeded an offer to compromise pursuant to Code of Civil Procedure section 998 (section 998) made by Maaso, and rejected by Signer, prior to the first arbitration.

On appeal, Maaso contends the trial court erred in denying him costs under section 998 and prejudgment interest under Civil Code section 3291 (section 3291) as the prevailing party in the second arbitration. In his cross-appeal, Signer contends the trial court erred in vacating the original arbitration award. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

In August 2002, Maaso was admitted to Palomar Medical Center and placed on a Welfare and Institutions Code section 5150 hold with symptoms of dementia, inappropriate behavior and paranoia. He was evaluated by Signer, a psychiatrist, who ordered a number of tests, including one to rule out neurosyphilis. This test was not performed while Maaso remained at Palomar Medical Center before being discharged.

In November 2004 Maaso, by and through his guardian ad litem, filed a medical malpractice action alleging that a neurologist and various Doe defendants had delayed a diagnosis of neurosyphilis, causing Maaso to suffer irreversible brain damage. Signer was later added as a Doe defendant.

Pursuant to a "Physician-Patient Arbitration Agreement" (the agreement), the parties stipulated to submit the medical malpractice action to binding arbitration. The agreement required a panel of three arbitrators. Maaso chose Attorney Jeffrey A. Milman as his party arbitrator; Signer chose Attorney P. Theodore Hammond as his party arbitrator; and the parties' arbitrators chose Retired Judge Alan Haber as the designated neutral arbitrator.

The agreement provided: "Each party to the arbitration shall pay such party's pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees, or other expenses incurred by a party for such party's own benefit."[1]

*The First Arbitration*

On January 23, 2008, prior to the first arbitration, Maaso served Signer with a section 998 offer to compromise for $500,000. The offer stated that "[a]cceptance shall be made by signing the attached acceptance and delivering a copy to the office of the neutral arbitrator, Alan Haber, before the commencement of the arbitration." Signer did not accept the offer.

The arbitration was conducted over four days between February 4 and 7, 2008, during which each party's counsel was limited to 30 minutes of argument and Maaso's counsel was not allowed to present rebuttal argument. The three arbitrators held a 45-minute telephone conference on February 28, 2008, during which Haber informed the other panelists that he had decided to deny Signer's motion for nonsuit. Haber also stated that he had not made up his mind on the issue of causation, that he would circulate a draft opinion in about a week, and that he would further consider the matter. He did not ask for any further briefing.

About five months before the first arbitration hearing, Maaso's party arbitrator Milman had moved to a new business address. He did not formally notify the parties or panel, but at some point during the four-day arbitration hearing he gave Signer's party arbitrator Hammond his business card with his new address.

On March 3, 2008, Hammond faxed a five-page letter arguing his position on the issue of causation. The letter included a "cc" to Milman, but the copy of the letter was mailed to Milman at his old address, and Milman did not see it until it was forwarded to him on March 17, 2008.

Meanwhile, on March 11, 2008, Haber faxed a signed arbitration award to Milman and Hammond. He concluded that while Signer was negligent, Maaso had failed to meet his burden of proof on causation.

---

[1] This language is nearly identical to Code of Civil Procedure section 1284.2, which reads: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."

On March 13, 2008, Milman, still unaware of Hammond's letter, faxed a three-page letter to Haber and Hammond, asking Haber to reconsider his decision. The following day the same arbitration award, now also signed by Hammond, was issued as the final binding award. The proof of service reflects that the award was mailed to Milman's old address, but faxed to his correct number. After receiving a copy of Hammond's March 3, 2008 letter on March 17, Milman immediately sent a letter to Hammond and Haber by mail and facsimile. Milman expressed his strong objection that the "letter was sent surreptitiously behind my back without permitting nor even addressing a discussion of the issues!" Hammond responded the next day that Milman's business card never made it into his files.

Signer then filed a petition to confirm the arbitration award, and Maaso a petition to vacate the award. Maaso relied on Code of Civil Procedure section 1286.2, which vests the trial court with the power to vacate an arbitration award that has been procured by corruption, fraud or other undue means. Signer opposed Maaso's petition to vacate.[2] The court granted Maaso's petition to vacate the award, finding that Hammond's postarbitration letter to the neutral arbitrator resulted in ex parte contact while the award was pending; that the ex parte contact "could have influenced" the award and that it called into question "the irregularity and integrity of the decision-making process"; and that "undue means were employed that caused the Award to issue." The court ordered a new arbitration hearing before a different neutral arbitrator.[3]

*The Second Arbitration*

The party arbitrators chose Attorney Darrell A. Forgey to act as the neutral arbitrator for the second arbitration, which took place between February 2 and 5, 2010. On January 15, 2010, Signer served Maaso with a section 998 offer to compromise the action for a dismissal in exchange for a waiver of costs and a waiver of Signer's right to sue for malicious prosecution. Maaso did not accept the offer. During the course of the arbitration proceedings Maaso's counsel advised the panel that Maaso had previously made a section 998 offer that was rejected by Signer, without stating the amount of the offer.

[2] The parties each submitted the declarations of their party arbitrators, and Signer also submitted a declaration by the neutral arbitrator. The trial court overruled Signer's "blanket objections" to Milman's declaration; sustained Maaso's "relevancy" objections to portions of Hammond's declaration; and sustained Maaso's objections to portions of Haber's declaration as inadmissible under Evidence Code section 703.5, discussed *post*.

[3] Signer's petitions for writ and Supreme Court review were both denied. The order vacating the arbitration award was not appealable because it directed that a new arbitration proceeding be conducted. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 3 [112 Cal.Rptr.3d 853, 235 P.3d 152].)

Maaso did not request that the arbitrators rule on the issue of section 998 costs or seek to present evidence on the issue.

On March 12, 2010, arbitrators Forgey and Milman signed an award in favor of Maaso for $594,243. The award concluded: "Costs and fees in accordance with the arbitration agreement." Signer filed an application with the arbitrators to correct the award, and Maaso petitioned the court to confirm the award and to award section 998 costs and section 3291 prejudgment interest. Signer initially opposed confirmation on the ground the petition was filed prematurely. He then filed a supplemental opposition which did not oppose confirmation of the award, but challenged the requested monetary enhancements.

On May 27, 2010, the court granted Maaso's petition to confirm the arbitration award. On the issue of additional costs, the court deemed Signer's opposition to the petition as a motion to tax costs, and set the matter for hearing. To stop the further accrual of interest, on June 3, 2010, Signer paid Maaso $595,545.48, which consisted of the arbitration award of $594,243, plus daily interest of $162.81 from the date of the judgment.

A hearing on the costs issue was held, after which the court issued a 13-page written order granting Signer's motion to tax costs. The court determined that all costs associated with the arbitration, including section 998 costs, were within the sole purview of the arbitrators and not the court. The court granted Maaso leave to file an amended cost memorandum limited to costs associated with the court proceedings. Maaso filed a revised cost memorandum. Signer paid Maaso $25,681.56 in court-related costs and additional interest, which was incorporated into the final judgment. Maaso filed an acknowledgment of full satisfaction of judgment in the amount of $621,227.04. These appeals followed.

## DISCUSSION

Maaso contends the trial court erred in refusing to award him section 998 costs and section 3291 prejudgment interest as the prevailing party in the second arbitration. In his cross-appeal, Signer contends the trial court erred in vacating the first arbitration award, arguing there never should have been a second arbitration award resulting in the current judgment. Because Maaso's appeal becomes moot if Signer is correct that a second arbitration should not have taken place, we address Signer's cross-appeal first.

## I. *Signer's Cross-appeal*

### A. *No Forfeiture of Issue*

As an initial matter, Maaso argues that Signer has forfeited any challenge to the trial court's order vacating the first arbitration award because Signer failed to move to vacate the second arbitration award and failed to oppose its confirmation.

Maaso points to Code of Civil Procedure section 1288, which provides that "[a] petition to vacate an award or to correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." He relies on *Knass v. Blue Cross of California* (1991) 228 Cal.App.3d 390, 395–396 [279 Cal.Rptr. 124] for the proposition that a party to an arbitration proceeding must first timely challenge an award under section 1288 before appealing the judgment confirming the award.

*Knass* is distinguishable. There, the appellant contended that he was substantially prejudiced by an error of law appearing on the face of the arbitration award. (*Knass v. Blue Cross of California, supra*, 228 Cal.App.3d at p. 392.) But he did not challenge the award until he filed his notice of appeal after the 100-day period allowed in Code of Civil Procedure section 1288 had expired. (*Knass v. Blue Cross of California, supra*, at pp. 393–394.) Here, Signer is not challenging an error of law or the *correctness* of the second arbitration award on any grounds under Code of Civil Procedure section 1286.2 for vacating an award. Rather, he challenges the order which required his participation in a second arbitration. In *Giorgianni v. Crowley* (2011) 197 Cal.App.4th 1462, 1471 [129 Cal.Rptr.3d 546], the appellate court also found *Knass* inapplicable where the appellant failed to file a petition to vacate the award. Because the appellant was not claiming an error of law and had presented his challenges to the award in opposition to the other party's petition to confirm the award, the court concluded that he had preserved his objection to entry of judgment on the award. (*Giorgianni v. Crowley, supra*, at p. 1471.)

Likewise, Signer opposed Maaso's petition to vacate the first arbitration award on the same grounds he raises on appeal. He also sought relief from the trial court's order vacating the award by petitioning this court for a writ of mandate (*Signer v. Superior Court* (Aug. 5, 2008, B209446)), and later by petitioning the Supreme Court for review of our order denying his writ petition (*Signer v. Superior Court* (Sept. 17, 2008, S165812)). Having lost those challenges, he was forced to participate in the second arbitration.

We agree with Signer that had he brought a motion to vacate the second arbitration hearing on the same grounds he had asserted two years earlier

before the same trial judge, the ruling would undoubtedly have been the same and would have been a waste of judicial resources. (See *United Firefighters of Los Angeles v. City of Los Angeles* (1991) 231 Cal.App.3d 1576, 1582 [283 Cal.Rptr. 8] ["We also think it important to note that because appellants had nothing new to add to their opposition to the arbitration, requiring them to make a request to vacate the award would be a needless act and a waste of judicial resources."].)

Accordingly, we are satisfied that Signer did not forfeit his challenge to the trial court's order vacating the first arbitration award.

### B.   *No Error in Vacating First Arbitration Award*

■ "[Code of Civil Procedure] Section 1286.2 sets forth the exclusive grounds for vacating an arbitration award. Except on these grounds, arbitration awards are immune from judicial review in proceedings to confirm or challenge the award." (*A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1475 [83 Cal.Rptr.2d 449].) As relevant here, Code of Civil Procedure section 1286.2, subdivision (a)(1) provides that an award must be vacated if it was "procured by corruption, fraud or other undue means."

"On appeal from an order vacating an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citation.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 55–56 [16 Cal.Rptr.3d 687].) Substantial evidence includes reasonable inferences drawn from the evidence in favor of the judgment. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632–1633 [29 Cal.Rptr.2d 191].) An inference may be drawn from a party's failure to produce available evidence or to explain evidence or facts in the case against him. (*Alonso v. State of California* (1975) 50 Cal.App.3d 242, 247, fn. 2 [123 Cal.Rptr. 536]; Evid. Code, §§ 412, 413.)

■ Code of Civil Procedure section 1286.2 does not define "undue means." Analyzing the statutory language "corruption, fraud or other undue means," the court in *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810 [5 Cal.Rptr.3d 442] (*Pour Le Bebe*) concluded that "[i]f the Legislature intended to permit an arbitration award to be vacated whenever the prevailing party engages in tactics that might in any way seem unfair, it would not have used the specific examples of fraud and corruption to describe the type of 'undue means' it had in mind." (*Id.* at p. 827.) The *Pour Le Bebe* court noted that the California Law Revision Commission stated in 1960 that " '[i]t has

been held that any conduct which amounts to fraud or which deprives either party of a fair and impartial hearing to his substantial prejudice may be ground for setting aside the award.' " (*Pour Le Bebe, supra,* at p. 827.) The court commented that this statement bore "a strong resemblance to the long-standing description of extrinsic fraud." (*Id.* at p. 828.) Citing 8 Witkin, California Procedure (4th ed. 1997) Attack on Judgment in Trial Court, section 223, page 727, the court continued that the "essential characteristic [of extrinsic fraud] is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." (*Pour Le Bebe, supra,* at p. 828.)

The court in *Pour Le Bebe* discussed several cases, including *Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138 [228 Cal.Rptr. 645]. In that case, the prevailing party waited until its postarbitration brief to argue that language in a newly revised labor contract resolved the employment issue that was the subject of the arbitration, after the parties had agreed before the arbitration that the new contract did not apply. In its postarbitration brief, the prevailing party argued that its opponent had an opportunity to raise the issue during the arbitration but failed to do so. The trial court vacated the award and the appellate court confirmed. The tactic of raising an issue in a postarbitration brief, without an opportunity for the opponent to respond, " 'intentionally and fraudulently deprived [the losing party] of its opportunity to present evidence in arbitration concerning the nonexistence of the [contractual provision] . . . .' " (*Pacific Crown Distributors, supra,* at p. 1149.)

While Signer argued below that Hammond's postarbitration letter brief to the neutral arbitrator did not constitute ex parte contact, he seems to concede on appeal that it did. Nevertheless, he argues that the letter brief does not constitute undue means because Maaso was not prevented from presenting evidence at the arbitration hearing. While it may be true that Maaso had an opportunity to present all of his evidence during the arbitration hearing, Maaso was prevented from presenting all of his *arguments* to the neutral arbitrator. As the plaintiff with the burden of proof on the issue of causation, Maaso did not have the last word because he did not have an opportunity to rebut the arguments made in Hammond's ex parte letter brief. In his declaration, Milman stated that had he been aware of Hammond's postarbitration letter brief, he would have "immediately" responded to "each and every point argued."

██ "The courts seem to agree that a fundamentally fair hearing requires . . . notice, opportunity to be heard and to present relevant and material evidence *and argument* before the decision makers . . . ." (*Bowles Financial*

*Group v. Stifel, Nicolaus & Co.* (10th Cir. 1994) 22 F.3d 1010, 1013, italics added [decided under the Federal Arbitration Act (9 U.S.C. § 10) which allows a reviewing court to vacate an award " 'procured by corruption, fraud or undue means' " (*Bowles*, at p. 1012)]; see Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2011) ¶ 5:393.3, p. 5-267 (rev. # 1, 2011) [citing *Bowles*].)[4] "The arbitrator . . . must give each of the parties to the dispute an adequate opportunity to present its evidence *and arguments*." (*Hoteles Condado Beach etc. v. Union De etc.* (1985) 763 F.2d 34, 39, italics added.)

Signer argues that the trial court found undue means "without a finding of culpability that even bordered on egregious wrongful conduct." He relies on *A.G. Edwards & Sons, Inc. v. McCollough* (9th Cir. 1992) 967 F.2d 1401, in which the Ninth Circuit reversed the trial court's order vacating an arbitration award for undue means where unmeritorious defenses were asserted. The Ninth Circuit stated, "Although the term [(undue means)] has not been defined in any federal case of which we are aware, it clearly connotes behavior that is immoral if not illegal. . . . Offering a meritless defense, however unfortunate, is part and parcel of the business of litigation; it carries no connotation of wrongfulness or immorality." (*Id.* at pp. 1403–1404, citation omitted.)

■ But ex parte communication between a party's representative (whether counsel or party arbitrator) and a neutral arbitrator is not part and parcel of the business of litigation. Indeed, courts have vacated awards on such basis. (See *Pacific & Arctic Railway & Navigation Co. v. United Transportation Union* (9th Cir. 1991) 952 F.2d 1144, 1148 [series of ex parte contracts between party arbitrator and neutral arbitrator justified vacating arbitration award]; *Hahn v. A. G. Becker Paribas, Inc.* (1987) 164 Ill.App.3d 660, 667 [115 Ill.Dec. 693, 518 N.E.2d 218] [vacating award for undue means defined as "akin to fraud and corruption; it refers to some aspect of the arbitrator's decision or decision-making process which was obtained in an unfair manner and beyond the normal processes contemplated by the act. . . . *Ex parte* contact involving disputed issues raises a presumption that the arbitration award was procured by fraud, corruption, or other undue means" (citations omitted)]; *Crosby-Ironton Federation of Teachers v. Independent School Dist.* (Minn. 1979) 285 N.W.2d 667, 670 ["Any case reaching this court involving review of arbitration awards where *ex parte* contacts are made, orally or in writing, in regard to the issues under dispute, without notifying all other parties to the dispute, will raise a strong presumption that

---

[4] Because the federal statute on vacating arbitration awards is similar to Code of Civil Procedure section 1286.2, we may consider persuasive federal authority. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1197 [58 Cal.Rptr.3d 904].)

the ultimate award made was procured by corruption, fraud or other undue means, and thus subject to vacation . . . ."].)

Signer points out that Milman also submitted a postarbitration letter brief to Haber, suggesting there was no difference in the actions of the party arbitrators. But the situations are not the same. Milman submitted his letter brief in response to receiving the unanticipated signed arbitration award, instead of the promised draft. The evidence shows that during the panel's last deliberation together, arbitrator Haber stated that he was undecided on the issue of causation, he would circulate a draft opinion about a week later, and he would further consider the issue. But instead of issuing a draft opinion, he issued a signed award. Milman responded to the award, asking Haber to reconsider, and copied Hammond at the same time.

Moreover, contrary to Signer's assertion, the trial court did not find Hammond's conduct to be purely innocent. At the hearing on the parties' cross-petitions, Maaso's attorney accused Hammond of acting "intentionally, that it wasn't an oversight" that Hammond did not fax his postarbitration letter brief to Milman. The court responded, "that's part of my finding," indicating it had found Hammond's conduct in not faxing a copy of his letter to Milman was intentional. The court also stated: "The fact that one arbitrator chose to use facsimile for the neutral and mail to the other and sent it to the wrong address, maybe it was a mistake. But it's very, very suspicious in the context of what took place, and I'm just going to say it stinks. It goes to the integrity of the decision-making process in the context of this case." The court further stated: ". . . I've had several petitions to confirm arbitration awards. They have always been approved. . . . This is the first time in my judicial experience that I have entertained a motion to vacate and not confirm an arbitration award. And I've thought a lot about the case, and I'm very troubled about it. . . . The problem that I have is that the way the decision came about, it's more than just troubling, to me it goes to the very essence of the way legal affairs should be conducted. I think it was an ex parte communication. . . . I've never seen anything quite like it. . . . I think the process is extremely troubling."

▮ Signer also argues that even assuming there was undue means, Maaso failed to demonstrate that any alleged undue means caused the award to issue. (See *Pour Le Bebe, supra,* 112 Cal.App.4th at p. 834 ["the moving party needs to demonstrate a nexus between the award and the alleged undue means used to attain it"].) Relying on a declaration by arbitrator Haber, Signer argues the evidence shows that Haber considered but did not rely on Hammond's letter in reaching his decision. But the trial court sustained Maaso's objections to this portion of Haber's declaration regarding his

decisionmaking process under Evidence Code section 703.5.[5] Signer argues the trial court's evidentiary ruling was wrong, relying on *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 927 [20 Cal.Rptr.2d 834], in which the court stated that "Evidence Code section 703.5 limits the testimony of an arbitrator whose decision is being challenged on grounds of bias to that which addresses the charge of bias, partiality or improper conduct." But Signer ignores the opinion's next sentence: "The merits of the controversy, the manner in which evidence was weighed or the mental processes of the arbitrators in reaching their decision are not subject to judicial review." (*Ibid.*) Because the portions of arbitrator Haber's declaration do not fall within any of the four statutory exceptions and reflect his decisionmaking process, the trial court did not err in excluding this evidence.

■ In the absence of such evidence, the trial court could reasonably infer that Hammond's ex parte letter on the key issue of the case that was still undecided caused the award to issue in favor of Signer. (See *Good v. Kaiser Foundation Hospital* (1984) 152 Cal.App.3d 819, 822 [199 Cal.Rptr. 581] [" '*The arbitrators representing the parties frequently behave more like advocates than arbitrators.*' "].) We note that despite submitting a declaration, Hammond never answered the question of why he did not fax a copy of his letter brief to Milman when he faxed the letter to the neutral arbitrator. Indeed, at the hearing on the parties' cross-petitions, the trial court directly asked Signer's attorney this question, to which she responded she was unsure whether Hammond had Milman's fax number. We agree with the trial court that an ex parte communication between a party arbitrator and the neutral arbitrator while the outcome of the case is still under consideration undermines the fairness and integrity of the arbitration process.

We are satisfied the trial court correctly vacated the first arbitration award. We therefore turn to the merits of Maaso's appeal.

## II. *Maaso's Appeal*

Maaso contends the trial court erred in refusing to award him section 998 costs, including expert witness and arbitrator fees, and section 3291 prejudgment interest. We disagree.

---

[5] Evidence Code section 703.5 provides: "No person presiding at any judicial or quasi-judicial proceeding, and no arbitrator or mediator, shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure. However, this section does not apply to a mediator with regard to any mediation under Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

Section 998, subdivision (b) provides that "[n]ot less than 10 days prior to commencement of trial or arbitration (as provided in Section 1281 or 1295) of a dispute to be resolved by arbitration, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time." "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." (§ 998, subd. (b)(2).) Section 998, subdivision (d) provides: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."

Section 3291 provides in relevant part: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, . . . it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

As an initial matter, Signer argues that the trial court could not rely on Maaso's section 998 offer as a basis for awarding costs and interest because the offer was made and rejected prior to the first arbitration in 2008 and a second offer was never made prior to the second arbitration in 2010. To support his position, Signer focuses exclusively on the terms of the offer, which was captioned with the name of the neutral arbitrator in the first arbitration, and stated that it could be accepted only by delivering a copy of the signed acceptance to that arbitrator. Signer complains that once a new neutral arbitrator was appointed, Signer could no longer accept the offer pursuant to its terms. It is true that Signer could not accept the offer before the second arbitration. But this is not because a different arbitrator was presiding, but because the offer had not been accepted prior to arbitration and was deemed withdrawn pursuant to section 998, subdivision (b)(2). As Maaso points out, the offer was not open for years, waiting for Signer to realize it

would be prudent to accept it. Moreover, Signer cites no authority requiring a party to renew a section 998 offer before a subsequent trial or arbitration.

On the other hand, Maaso refers us to *Deocampo v. Ahn* (2002) 101 Cal.App.4th 758 [125 Cal.Rptr.2d 79], in which a plaintiff's section 998 offer that was served and rejected prior to the first trial was enforced against the defendant when the plaintiff obtained judgment in a second trial more favorable than the offer, even though the defendant prevailed at the first trial.

■ We nevertheless conclude that Maaso was not entitled to these costs and interest because he never requested these enhancements from the arbitrators. While Maaso put the panel on notice that a section 998 offer had been made, it is undisputed that he did not state the amount or seek to present evidence on the issue. With knowledge of the rejected offer and that Maaso was the prevailing party, the arbitrators made no award of section 998 costs or section 3291 interest when issuing their final binding arbitration award. Instead, the award was for "[c]osts and fees in accordance with the arbitration agreement," which provided that each party would pay its "pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees, or other expenses incurred by a party for such party's own benefit."

Moreover, the parties stipulated that "the claims and controversies alleged in this action" were submitted to "binding, contractual arbitration." The medical malpractice complaint sought "damages according to proof, costs and all proper relief." Because the submission was not limited, it included the issue of costs and interest and, where available, attorney fees. (See *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 706 [132 Cal.Rptr.2d 250].)

■ In *Corona* the prevailing party in a contractual arbitration sought attorney fees and costs incurred in the arbitration from the superior court without having first sought them from the arbitrator. In affirming the trial court's denial of such costs, the reviewing court noted that because the parties' stipulation did not limit the issues to be resolved through arbitration, the issue of entitlement to attorney fees and costs was subject to determination in the arbitration proceedings. (*Corona v. Amherst Partners, supra,* 107 Cal.App.4th at p. 706.) The court stated: "[W]here parties have agreed their dispute will be resolved by binding arbitration, judicial intervention is limited to reviewing the award to see if statutory grounds for vacating or correcting the award exist. (Code Civ. Proc., §§ 1286, 1286.2, 1286.6; *Moshonov v. Walsh* [(2000)] 22 Cal.4th [771,] 775 [94 Cal.Rptr.2d 597, 996 P.2d 699].) Under the statutory scheme, a party's failure to request the arbitrator to determine a particular issue within the scope of the arbitration is not a basis

for vacating or correcting an award. (Code Civ. Proc., §§ 1286.2, 1286.6; *Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 524 [212 P.2d 233].) Unless a statutory basis for vacating or correcting an award exists, a reviewing court 'shall confirm the award as made . . . .' (Code Civ. Proc., § 1286.)" (*Ibid.*) The court concluded: "Such an interpretation of the applicable statutes promotes the Legislature's determination that there is a ' "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] As a general rule, parties to a private arbitration impliedly, if not expressly, agree that the arbitrator's decision will be both binding and final and thus the arbitrator's decision 'should be the end, not the beginning, of the dispute.' [Citation.] Allowing a party to request that the trial court make an award that was within the scope of the arbitration but not pursued in that forum is inconsistent with the policies underlying the statutory private arbitration scheme." (*Ibid.*)

■ Although Maaso styled his petition as one to "confirm" the award, he essentially sought "correction" of the award by asking the court to add costs and interest not awarded by the panel, and which were in fact inconsistent with the panel's award. Code of Civil Procedure section 1286.6 sets forth the exclusive grounds for correction of an award "if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy." None of these three statutory grounds exist here. Thus, adding such interest is not a " 'mere recalculation, but a revision in substance, adding an element of damages not covered . . . in the award as rendered.' " (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95 [220 Cal.Rptr. 400].) Additionally, where the entitlement to attorney fees is within the scope of the issues submitted to binding arbitration, arbitrators do not " 'exceed[] their powers' " by denying a party's request for attorney fees, "even where such a denial order would be reversible legal error if made by a court in civil litigation." (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 784 [94 Cal.Rptr.2d 603, 996 P.2d 706]; *Moshonov v. Walsh, supra*, 22 Cal.4th at p. 773.)

■ Maaso argues that because section 998 uses the language "the *court or arbitrator*," either the court or the arbitrator may award section 998 cost enhancements following an arbitration. But that was not the Legislature's intent in amending section 998. "[S]ection 998 was amended to extend its provisions to actions resolved by arbitration"; the amendment was " 'simply to extend existing provisions [of section 998] to include costs incurred in

arbitration.' " (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 730, fn. 1 [15 Cal.Rptr.3d 829].) As the trial court here aptly noted: "The statute's language is parallel: what the court can do, the arbitrator can also do. The most logical way to read this parallel language is that in cases tried to the court, the court makes the decisions about awarding CCP § 998 costs connected with the case, while in cases that are arbitrated, those decisions belong to the arbitrator. It is not logical to read the statute as inviting a procedure that permits a party to forum shop between the court and the arbitrator, and to bring the request to whichever forum that party believes is most likely to make a favorable award."

Additionally, it makes sense that only the arbitrator decides section 998 costs incurred in arbitration because an award of expert witness costs, and the amount, is discretionary under section 998. "[N]ot only is the determination as to the amount [of attorney fees and costs] properly within the purview of the arbitrator, but we observe it is the arbitrator, not the trial court, which is best situated to determine the amount of reasonable attorney fees and costs to be awarded for the conduct of the arbitration proceeding." (*DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809, 1816–1817 [37 Cal.Rptr.2d 558].)

■■■ The cases on which Maaso relies do not assist him. In *Pilimai v. Farmers Ins. Exchange Co.* (2006) 39 Cal.4th 133 [45 Cal.Rptr.3d 760, 137 P.3d 939], the court was not called upon to decide whether it was for the court or the arbitrator to make an award of section 998 costs, but to address other issues, including whether the cost-shifting provisions of section 998 and Code of Civil Procedure section 1032 applied to uninsured motorist arbitrations mandated by Insurance Code section 11580.2. (*Pilimai v. Farmers Ins. Exchange Co., supra*, at p. 137.) (See *Styne v. Stevens* (2001) 26 Cal.4th 42, 57 [109 Cal.Rptr.2d 14, 26 P.3d 343] ["An opinion is not authority for a point not raised, considered, or resolved therein."].)

In *Weinberg v. Safeco Ins. Co. of America* (2004) 114 Cal.App.4th 1075 [8 Cal.Rptr.3d 224], a claimant in a statutorily mandated underinsured motorist arbitration against his insurer received an award in his favor. Although the award exceeded the claimant's section 998 offer, the award did not address the issue of costs. (*Weinberg v. Safeco Ins. Co. of America, supra*, at p. 1085.) The appellate court ruled that the claimant was entitled to both section 998 costs and section 3291 interest because the award did not state that he was *not* entitled to costs. (*Weinberg v. Safeco Ins. Co. of America, supra*, at p. 1085.) But here, the award in favor of Maaso did address costs, providing for "[c]osts and fees in accordance with the arbitration agreement."

*Caro v. Smith* (1997) 59 Cal.App.4th 725 [69 Cal.Rptr.2d 306] can also be distinguished. There, the arbitrator determined that the prevailing party was

entitled to statutory costs, declaring that " '[s]tatutorily recoverable fees and costs are also awarded according to proof.' " (*Id.* at p. 736.) While the arbitrator awarded statutory attorney fees, the award said nothing about prejudgment interest. The trial court awarded prejudgment interest based on the party's recovery of a more favorable judgment than her section 998 offer. (*Caro v. Smith, supra,* at p. 736.) The reviewing court affirmed, noting that the arbitrator's award "expressly contemplated affording Caro her right to statutory costs." (*Id.* at p. 737.)

Finally, in *Cobler v. Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518 [265 Cal.Rptr. 868], the arbitration award called for the defendant to pay compensation of $750 to the arbitrator. (*Id.* at pp. 523–524.) In confirming the award, the trial court ordered the defendant to pay an "additional" $750 to the arbitrator. (*Id.* at p. 525.) In affirming, the appellate court presumed there was no duplication of costs, and concluded that because the arbitrator had decided the $750 should be paid, the trial court was merely confirming that portion of the award. (*Id.* at p. 533.) As Signer notes, the *Caro* and *Cobler* decisions simply affirm the trial court's power to award costs in accordance with the arbitration award. Neither case provides the trial court with an independent basis for a cost award to a prevailing party where those costs were not part of the arbitration award.

## DISPOSITION

The judgment is affirmed. The parties to bear their own costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

A petition for a rehearing was denied March 1, 2012, and the opinion was modified to read as printed above. The petition of plaintiffs and appellants for review by the Supreme Court was denied May 16, 2012, S200945.