Filed 4/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BAKER MARQUART LLP, | B280861 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SS028568) |
| v. | |
| JAMES R. KANTOR, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gerald Rosenberg, Judge.  Reversed and remanded with directions.

Baker Marquart, Ryan G. Baker, Jaime W. Marquart and Blake D. McCay, for Plaintiff and Appellant.

Law Offices of Robert S. Gerstein, Robert S. Gerstein; Law Offices of Eric Y. Nishizawa and Eric Y. Nishizawa, for Defendant and Respondent.

_____

Appellant Baker Marquart LLP represented respondent James R. Kantor on a contingency basis in litigation that resulted in a significant recovery for Kantor. Following the conclusion of Baker Marquart's representation, Kantor filed a demand for fee arbitration in accordance with the parties' contingency fee agreement. In his arbitration demand, Kantor argued Baker Marquart charged him an incorrect contingency fee because Baker Marquart failed to complete two specified tasks. In advance of the arbitration, however, Kantor submitted, and the three-person arbitration panel (panel) accepted, an ex parte "confidential arbitration brief" that Kantor did not provide or otherwise reveal to Baker Marquart. In the confidential brief, Kantor raised and argued additional claims not presented in his arbitration demand. A majority of the panel ruled in Kantor's favor and awarded him a refund of a portion of the fees he had paid to Baker Marquart. In its ruling, the panel majority addressed and relied on claims Kantor raised in the confidential brief.

Baker Marquart filed a motion in superior court to vacate the arbitration award; and Kantor filed a motion to confirm the award. Among other things, Baker Marquart argued unsuccessfully that, under Code of Civil Procedure section 1286.2 (section 1286.2), the trial court was required to vacate the arbitration award because the award was procured by "corruption, fraud or other undue means." (§ 1286.2, subd. (a)(1).) In particular, Baker Marquart argued the confidential brief was an improper ex parte communication, relied on by the panel and to which Baker Marquart had no adequate opportunity to respond. The trial court denied Baker

2

Marquart's motion to vacate and granted Kantor's motion to confirm. Baker Marquart appeals the resulting judgment.

As discussed below, we conclude the arbitration award was procured by "undue means" as that term is used in section 1286.2 and, as a result, must be vacated.

## BACKGROUND

### A. Contingency Fee Agreement for Legal Services

Kantor hired Baker Marquart and another law firm (collectively, Baker Marquart)[1] to replace his former counsel who had been representing him in litigation against his stepmother and her accountant. In particular, Kantor sought to remove his stepmother and the accountant as trustees on certain family trusts of which Kantor was a beneficiary. Baker Marquart and Kantor executed a contingency fee agreement for legal services (fee agreement) that outlined their attorney-client relationship. According to the fee agreement, if 100 days had passed since execution of the fee agreement and Baker Marquart completed nine identified "minimum tasks," the contingency fee would increase from 30 to 35 percent of Kantor's "Recovery" as defined in the agreement.

The nine identified tasks (tasks) were: (1) "Decision made on whether to amend complaint in [the underlying lawsuit] to add claims such as accounting and/or other malpractice claims and, as necessary, a motion for leave to amend filed (not argued or heard)," (2) serve written special interrogatories within a specified timeframe, (3) serve requests for admissions within a specified timeframe, (4) serve form interrogatories within a

---

[1] The other law firm is not a party to this appeal. For simplicity, and unless otherwise necessary, we refer to both firms collectively as Baker Marquart.

specified timeframe, (5) serve requests for documents within a specified timeframe, (6) serve deposition notices within a specified timeframe, (7) request documents either informally or formally within a specified timeframe from transactional trust counsel, (8) serve deposition subpoenas and document requests within a specified timeframe, and (9) "Consultation with non-testifying, consulting art appraisal expert interviewed . . . ."

The fee agreement also included an arbitration clause. According to the arbitration clause, the parties agreed to arbitrate "any dispute regarding [their] respective rights and obligations under [the] contingent fee agreement for legal services or regarding [the attorneys'] professional services or any other matter between" the parties. The arbitration clause specified two different types of disputes. On the one hand, the parties agreed that "disputes regarding the amount of the contingent fee and costs and expenses payable by [Kantor] under [the] contingent fee agreement for legal services will be resolved by arbitration conducted in accordance with the rules of the Beverly Hills Bar Association." On the other hand, the parties agreed that "disputes regarding all other matters, including matters related to [the attorneys'] professional services, conflicts of interest, and breach of fiduciary duty, will be resolved by binding arbitration conducted in Los Angeles, California either by ADR Services Inc. ('ADRS') or JAMS Inc. ('JAMS'), as selected by the party filing the claim, in accordance with the streamlined rules of JAMS."

The arbitration clause also stated the parties "agree to be bound by the decision of the arbitrator(s) and to waive the right to trial by judge or a jury and the right to appeal from the award of the arbitrator(s) or any judgment or order entered on the

4

arbitration award." Further, the agreement provided "[a]ny arbitration award shall be final, binding and conclusive upon [Kantor], on the one hand, and [the attorneys], on the other hand, and shall be enforceable in all courts of competent jurisdiction."

## B.    Kantor's Recovery in Litigation and Baker Marquart's Fees

Following Baker Marquart's representation of Kantor, Kantor received over $1.6 million in settlement Recovery. Applying a 35 percent contingency rate, Baker Marquart received close to $600,000 in fees.

## C.    The Fee Arbitration

### 1.    Kantor's Fee Arbitration Demand

Approximately one year after receiving his substantial recovery, Kantor filed a demand for fee arbitration against Baker Marquart (demand). In his demand, Kantor stated the contingency fee "was not to increase above 30% until 9 specified tasks were completed." Kantor alleged "Attorney[s] did not complete tasks 1 and 9." Accordingly, Kantor claimed the contingency fee of 35 percent was improper. He also claimed two additional billing errors, which are not relevant to this appeal. Other than tasks one and nine, Kantor's demand did not mention the remaining seven tasks listed in the fee agreement and did not claim any of the tasks, even if performed, were performed inadequately.[2]

_____

[2] In full, the relevant portion of the demand states: "The subject attorney fee agreement (the 'Agreement') shows a contingency fee structure. According to the Agreement's terms, the contingency fee therein was not to increase above 30% until 9 specific tasks were completed. Attorney did not complete tasks 1 and 9. In the absence of performance of all 9 specific tasks, the Agreement explicitly provides that compensation cannot exceed

### 2. Baker Marquart's Response to Kantor's Demand

Prior to the arbitration, Baker Marquart submitted a response to Kantor's demand. In its response, Baker Marquart addressed tasks one and nine. With respect to task number one—whether to amend the complaint to add accounting malpractice or other malpractice claims—Baker Marquart argued it had thoroughly considered the issue of adding malpractice claims against the accountant, had discussed it with Kantor, and had decided not to amend the complaint. Baker Marquart also submitted time records to show its attorneys had considered the issue. With respect to task number nine—consultation with art appraisal expert—Baker Marquart argued it had informally consulted with art experts, but the entire issue of appraisal of artwork was rendered moot by a trial court order made shortly after Kantor hired Baker Marquart.

### 3. Kantor's Ex Parte Confidential Brief

A couple of weeks prior to the arbitration, the chairperson of the panel ordered the parties to submit any briefs, exhibits, or evidence to the panel no later than December 2, 2015. When Baker Marquart sought clarification from the panel chairperson as to whether the parties were required to exchange those same documents with each other, the chairperson responded, "I would

---

30%. Such clause was intended to assure that the client was rendered legal services properly. Attorneys disregarded the terms of the Agreement that Attorney drafted and assessed a 35% contingency fee, despite the failure to complete all 9 specific tasks. 5% of the total settlement amount is significant because the total amount of settlement recovery for which the contingency fee was calculated is in excess of $1M."

6

expect that the parties would exchange all documents which they intend or may introduce during the arbitration. [¶] A confidential brief need not be given to opposing counsel."  Baker Marquart exchanged all its documents, including its arbitration brief, with Kantor.  Although Kantor shared his exhibits and documents with Baker Marquart, he did not share the confidential arbitration brief he submitted to the panel (confidential brief). Baker Marquart had no knowledge of the confidential brief until the arbitration hearing was under way and did not see a copy of the confidential brief until much later, when Kantor included a copy of it with his reply brief in support of his motion to confirm the award filed with the trial court (discussed below).

In the confidential brief, Kantor argued Baker Marquart not only failed to complete tasks one and nine—i.e., the two tasks he identified in his demand—but also had failed to complete the remaining seven tasks as well.  In particular, with respect to tasks two through five, Kantor claimed that, although Baker Marquart propounded the required discovery, "they utterly failed to contest the boiler-plate objections that they received in response to such" and they "never moved [to] compel further responses."  And with respect to tasks six through eight, Kantor stated Baker Marquart failed to move to compel responses to deposition questions, did not properly request documents from transactional trust counsel, and failed to serve one required deposition subpoena.  Kantor also appeared to argue for the first time that task one required Baker Marquart to consider amending the underlying complaint to add an "accounting" cause of action in addition to accounting malpractice claims.  Thus, based on Baker Marquart's alleged failure to complete all the

7

nine listed tasks or any one of them, Kantor claimed the contingency fee was improper.

### 4. The Arbitration Hearing

The arbitration took place on December 7, 2015. The parties signed a "binding agreement" stating "the award will immediately become final and binding and that a new trial may not be requested."

According to Baker Marquart, during the arbitration hearing, it became apparent Kantor was urging a reduction of the contingency fee based on Baker Marquart's alleged failure to complete tasks other than those addressed in the demand. Baker Marquart objected to Kantor making new claims and arguments at the arbitration. The panel acknowledged it had received the confidential brief but would not allow Baker Marquart to review it.

According to Kantor, the panel concluded the arbitration hearing after each party confirmed it had nothing further to argue.

### 5. The Arbitration Award

A few weeks after the arbitration hearing, the panel issued its statement of decision and award in Kantor's favor (award). The award was a majority decision and not unanimous. In its award, the majority stated Kantor claimed Baker Marquart "assessed the wrong contingency fee percentage as specified in the Fee Agreement because [Baker Marquart] did not complete the nine specific tasks needed to increase the percentage." Similarly, the majority stated Kantor's "first claim is that not all nine tasks were completed in that they were not handled promptly or completely." The majority also asserted Baker

8

Marquart had argued it "completed all nine tasks and [is] entitled to the increased percentage."

In discussing the tasks, the majority remarked that, at the arbitration hearing, Baker Marquart "indicated that it did not matter how well they did the nine tasks only that they did them. Whether or not [Baker Marquart] filed timely motions or held in depth discussions with art experts did not matter. Only that [Baker Marquart] had done what [they] felt was sufficient. During the representation [Kantor] did question [Baker Marquart's] follow-through on the tasks arguing that they had not all been completed."

The majority then made three findings relevant here. First, the majority found Baker Marquart "did not properly participate in the discovery process by filing motions to compel." Second, the majority found Baker Marquart "did not pursue getting an accounting from either the accountant as the accountant or as a trustee or from the other trustee." And, finally, the majority found Baker Marquart "did not pursue claims against the accountant based on the fact that he was bankrupt." Based on these three findings, the majority concluded Baker Marquart had not kept Kantor's best interests in mind. Specifically, the majority stated, "Attorneys have an obligation to represent their client's best interests. In this case it does not appear that [Baker Marquart] kept [Kantor's] best interests in mind: [Baker Marquart] did not properly participate in the discovery process by filing motions to compel; [Baker Marquart] did not pursue getting an accounting from either the accountant as the accountant or as a trustee or from the other trustee; and [Baker Marquart] did not pursue claims against the accountant based on the fact that he was bankrupt."

9

Thus, the majority determined Baker Marquart's fees and costs "were excessive because [Baker Marquart] did not complete the nine tasks in a competent and timely manner as provided for in section 7 of the Fee Agreement. The Arbitration [majority] finds that a contingency fee of 30% is appropriate." The majority awarded Kantor a refund of $105,027.73.

## D. Baker Marquart's Petition to Vacate, and Kantor's Motion to Confirm, the Award

Following receipt of the award, Baker Marquart filed a petition to vacate the award or, in the alternative, to correct the award, and Kantor filed a motion to confirm the award. In support of his motion to confirm, Kantor included a letter his counsel sent to Baker Marquart on the day the parties were to exchange their arbitration documents. Kantor's counsel wrote to explain his belief that the Beverly Hills Bar Association's Rules of Procedure for Fee Arbitrations, under which the arbitration was proceeding, did not require the parties to exchange documents. In an apparent effort to ease Baker Marquart's concern at not having all documents Kantor might submit to the panel, Kantor's counsel stated "[y]ou have possession of the entire file for the matter, and thereby have the advantage of possession of all documents that could be relevant, here. All of the documents that are [Kantor's] exhibits are from the file, and your reply to [Kantor's] demand for arbitration indicates that you are well aware of the issues, here."

In connection with his reply brief in support of his motion to confirm the award, Kantor produced a copy of the confidential brief. This was the first time Baker Marquart saw and was able to review the confidential brief. Baker Marquart filed a surreply

in an attempt to respond to the issues disclosed in the confidential brief.

**E.    Trial Court Order Denying Baker Marquart's Motion to Vacate the Award and Granting Kantor's Motion to Confirm the Award; Judgment**

On October 4, 2016, the trial court held a hearing on Baker Marquart's petition to vacate the award and Kantor's motion to confirm the award.  At the hearing, the court recited its tentative ruling which was to deny Baker Marquart's motion to vacate and to grant Kantor's motion to confirm.  The court stated, Baker Marquart "fails to show that [Kantor's] filing of a brief with the arbitrators prejudiced it.  Looking at the arbitration award, it clearly reflects that it was based on the issues set forth in the arbitration claim, specifically, that [Baker Marquart] failed to perform tasks and that these tasks were the guarantee that legal services would be properly provided.  The arbitration panel based its decision on [Baker Marquart's] failure to, quote, 'properly participate in the discovery process by filing motions to compel; [Baker Marquart] did not pursue getting an accounting from either the accountant as the accountant or as a trustee or from the other trustee; and [Baker Marquart] did not pursue claims against the accountant based on the fact that he was bankrupt.' "

On January 5, 2017, the trial court entered judgment in favor of Kantor, confirming the award.  Baker Marquart appealed.

## DISCUSSION

### A.    Standard of Review

"We subject the trial court's rulings and the underlying award to different standards of review.  To the extent the trial court made findings of fact in confirming the award, we affirm

11

the findings if they are supported by substantial evidence. [Citation.] To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo." (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11–12 (*Cooper*); *SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1198 (*SWAB Financial*).)

## B. **Baker Marquart did not waive its right to appeal.**

As an initial matter, Kantor argues Baker Marquart waived its right to appeal the trial court's order. We disagree.

Although Kantor correctly notes that a waiver of the right to appeal must be " 'clear and express' " (*Cooper*, *supra*, 230 Cal.App.4th at p. 19), he incorrectly asserts the arbitration clause here "provides that all arbitrations between the parties are binding." As noted above, the arbitration clause states all disputes other than those related to fees shall be "binding." With respect to fee disputes, the parties agreed to arbitrate those disputes in accordance with the arbitration rules of the Beverly Hills Bar Association. And, as Kantor concedes, those rules provide that a fee arbitration is not binding unless, after a fee dispute arises, the parties agree to binding arbitration.

Here, prior to the fee arbitration, Kantor and Baker Marquart eventually agreed the fee arbitration would be "binding" as that term is used in the Beverly Hills Bar Association arbitration rules. Those rules state that, although a "binding" arbitration award precludes a party from seeking a retrial in court, a party may nonetheless challenge the binding award under limited circumstances. Indeed, the panel confirmed this in its cover letter to the award, where it stated: "This Award is rendered as a Binding Award. A Binding Award may be

12

appealed only upon very limited grounds as set forth in the Code of Civil Procedure, § 1284 and § 1285 et seq."

In light of the above, Kantor has not and cannot show the required " 'clear and express' " waiver of the right to appeal. (*Cooper*, *supra*, 230 Cal.App.4th at p. 19.)  Accordingly, we turn to the merits of Baker Marquart's appeal.

## C.   The award must be vacated.

### 1.   Applicable Law

"As a general rule, the merits of an arbitrator's decision are not subject to judicial review."  (*SWAB Financial*, *supra*, 150 Cal.App.4th at p. 1195.)  As our Supreme Court has explained, "it is the general rule that, 'The merits of the controversy between the parties [to an arbitration agreement] are not subject to judicial review.'  [Citations.]  More specifically, courts will not review the validity of the arbitrator's reasoning.  [Citations.]  Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award.  [Citations.]  [¶] Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).)

There are statutory exceptions, however, to this general "no review" rule.  Relevant here, section 1286.2 requires a court to vacate an arbitration award if the court determines the award "was procured by corruption, fraud or other undue means." (§ 1286.2, subd. (a)(1).)  Although section 1286.2 does not define "undue means," courts have addressed the meaning of that term as used in section 1286.2.  For example, "[i]mproper ex parte communications between an arbitrator and a litigant can serve as a basis for a corruption, fraud or other undue means finding." (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 825.)

13

And as we explained in *Maaso v. Signer* (2012) 203 Cal.App.4th 362 (*Maaso*), "the court in *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810 [5 Cal.Rptr.3d 442] (*Pour Le Bebe*) concluded that '[i]f the Legislature intended to permit an arbitration award to be vacated whenever the prevailing party engages in tactics that might in any way seem unfair, it would not have used the specific examples of fraud and corruption to describe the type of "undue means" it had in mind.' [Citation.] The *Pour Le Bebe* court noted that the California Law Revision Commission stated in 1960 that ' "[i]t has been held that any conduct which amounts to fraud or which deprives either party of a fair and impartial hearing to his substantial prejudice may be ground for setting aside the award." ' [Citation.] The court commented that this statement bore 'a strong resemblance to the long-standing description of extrinsic fraud.' [Citation.] Citing 8 Witkin, California Procedure (4th ed. 1997) Attack on Judgment in Trial Court, section 223, page 727, the court continued that the 'essential characteristic [of extrinsic fraud] is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Maaso*, at pp. 371–372.) " 'Extrinsic' fraud is that conduct which 'results in depriving either of the parties of a fair and impartial hearing to their substantial prejudice.' " (*Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1147.)

14

**2. The trial court erred in confirming an arbitration award that took into consideration claims not made in the arbitration demand and to which Baker Marquart was not given an adequate or meaningful opportunity to respond.**

Baker Marquart asserts the trial court's order confirming the award must be reversed because the award was based on issues and claims Kantor raised in the confidential brief and not in the demand. As a result of having no true opportunity to respond to the new claims raised in the confidential brief, Baker Marquart argues the award was procured by "undue means" under section 1286.2 and must be vacated. We agree.

Because the relevant facts are not in dispute, we review the trial court's ruling de novo. (*Cooper*, *supra*, 230 Cal.App.4th at p. 12.) The relevant facts are as follows: In his demand for fee arbitration, Kantor identified two tasks he claimed Baker Marquart failed to complete (specifically, tasks one and nine); Baker Marquart received a copy of the demand; Baker Marquart responded to the demand claiming it had substantially completed the identified tasks one and nine; prior to the arbitration, Kantor's counsel wrote to Baker Marquart stating "your reply to [Kantor's] demand for arbitration indicates that you are well aware of the issues, here;" prior to the arbitration, Kantor also submitted a confidential brief to the panel, in which he claimed the contingency fee rate should be reduced because Baker Marquart failed to complete *all* of the tasks and failed to pursue an accounting, which was not one of the listed tasks; despite its objections, Baker Marquart did not receive a copy of the confidential brief until long-after the arbitration had concluded

15

and the panel had issued the award; at the arbitration, the parties discussed issues that touched on tasks two through eight as well as the issue of an accounting and the panel permitted the parties to present argument until they stated they were finished; the award references claims and issues Kantor raised in the confidential brief.

Based on these facts, we conclude the award was procured by "undue means" as that term is used in section 1286.2 and, therefore, must be vacated. As we have previously held, " '[A] fundamentally fair hearing requires . . . notice, opportunity to be heard and to present relevant and material evidence *and argument* before the decision makers . . . .' [Citations.] 'The arbitrator . . . must give each of the parties to the dispute an adequate opportunity to present its evidence *and arguments*.' " (*Maaso, supra*, 203 Cal.App.4th at pp. 372–373, fn. omitted.) In *Maaso*, this division concurred with the trial court there that an ex parte communication with an arbitrator before the arbitration had concluded constituted "undue means" for purposes of section 1286.2. (*Maaso, supra*, at pp. 366, 373–375.) We explained, "ex parte communication between a party's representative (whether counsel or party arbitrator) and a neutral arbitrator is not part and parcel of the business of litigation." (*Id.* at p. 373.)

Similar to *Maaso*, Baker Marquart did not have " 'an adequate opportunity to present its evidence *and arguments*.' " (*Maaso, supra*, 203 Cal.App.4th at p. 373.) Throughout the arbitration, Baker Marquart was operating under its belief that Kantor's position was as stated in his demand—namely, the contingency fee rate should be reduced because Baker Marquart failed to complete tasks one and nine. This was a reasonable belief. After all, not only is that how Kantor framed the issue,

16

Kantor never sought leave to amend his demand or otherwise alerted Baker Marquart that his demand was enlarged to include all the tasks and the issue of an accounting. Indeed, to the contrary, Kantor's counsel reassured Baker Marquart in writing that Baker Marquart's response to Kantor's demand (which addressed only tasks one and nine) "indicates that you are well aware of the issues, here." Thus, not surprisingly, Baker Marquart prepared and focused its defense on tasks one and nine.

Kantor argues Baker Marquart had an adequate opportunity at the arbitration hearing to address the remaining tasks because the exhibits exchanged before the arbitration hearing suggested other tasks would be discussed, the confidential brief was based on the exchanged exhibits, the parties did discuss other tasks at the arbitration, and the panel allowed the parties to argue as long as they wanted. This misses the mark. Assuming Baker Marquart had all the documents before it and was permitted to address points made at the hearing, that does not make up for the fact that, going into the arbitration hearing and through no fault of its own, Baker Marquart was unaware the contingency rate might be reduced based on its alleged failure to perform any task other than tasks one and nine. Kantor's ex parte confidential brief gave him an unfair advantage at the arbitration because, as a result of that brief, he and the panel were prepared to consider and to argue all the tasks as well as the issue of an accounting. Under the facts of this case, we conclude Baker Marquart had no meaningful or adequate opportunity to respond to the new claims Kantor raised for the first time in its confidential brief. This is neither fair nor proper.

17

In addition, and despite Kantor's position to the contrary, we conclude Baker Marquart was prejudiced by its inability to respond to Kantor's claims raised in the confidential brief. (*Maaso, supra*, 203 Cal.App.4th at pp. 371–372.) The award clearly references claims that were not put at issue by the demand, but rather were raised in the confidential brief. For example, the award states repeatedly that Kantor claimed Baker Marquart failed to complete any of the tasks, when in the demand Kantor claimed Baker Marquart failed to complete only tasks one and nine. The award also specifically found Baker Marquart "did not properly participate in the discovery process by filing motions to compel" and "did not pursue getting an accounting," which are references to tasks and issues beyond tasks one and nine. Further, Baker Marquart explains in detail the additional evidence and argument it would have presented had it been on notice of the claims at issue. Although we do not decide the strength or validity of Baker Marquart's proffered evidence or argument, it is sufficient to note Baker Marquart would have acted differently had it known what claims were at issue.

Kantor argues that, even if it was error for the panel to consider claims based on any task or issue outside of tasks one and nine, the award is nonetheless valid because it is also based on Baker Marquart's failure to complete tasks one and nine. We disagree. As stated, task one concerned Baker Marquart's decision whether to move to amend the underlying complaint to add a cause of action for accounting malpractice or other malpractice claims. Although the award states Baker Marquart failed to "pursue getting an accounting" and failed to "pursue claims against the accountant based on the fact that he was

18

bankrupt," that is not what task one contemplated. In fact, it was in the confidential brief where Kantor first mentioned Baker Marquart's alleged failure to pursue an accounting. Similarly, the plain language of the award reveals it was not based on any failure of Baker Marquart to complete task nine, which required Baker Marquart to consult with a non-testifying art appraisal expert. Finally, it is beyond dispute that the panel considered and relied on the confidential brief. To the extent it is difficult to decipher which specific task or issue the panel considered when making each of its findings, we conclude that the submission of and reliance on the ex parte confidential brief corrupted the arbitration proceeding and resulting award such that the entire award must be vacated.

To be clear, in concluding the trial court erred, we are not reviewing the merits of the panel majority's findings of fact or conclusions of law, nor are we considering the sufficiency of the evidence to support the majority's decision. (*Moncharsh*, *supra*, 3 Cal.4th at p. 11.) Rather, we have determined the arbitration— specifically Kantor's submission of, and the majority's reliance on, an ex parte confidential brief that raised issues not known to Baker Marquart—was fundamentally unfair such that the award was procured by "undue means." (§ 1286.2, subd. (a)(1).) "[A]n ex parte communication between a party['s representative] and the neutral arbitrator while the outcome of the case is still under consideration undermines the fairness and integrity of the arbitration process." (*Maaso*, *supra*, 203 Cal.App.4th at p. 375.)

Because we conclude the award was procured by undue means and must be vacated, we need not and do not reach Baker Marquart's remaining arguments on appeal.

## DISPOSITION

The judgment is reversed and remanded with directions that the trial court enter a new and different order vacating the award.  Baker Marquart is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION.


                                        LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.