Filed 4/19/21  Certified for Publication 5/10/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOANNA G. GRABOWSKI,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>Defendants and Respondents. | D076968<br><br><br><br>(Super. Ct. No. 37-2019-00013115-CU-PA-CTL) |

APPEAL from an order of the Superior Court of San Diego County, David M. Rubin, Judge.  Reversed with directions.

Joanna G. Grabowski, in pro. per., for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Alysia B. Carroll; Davis, Grass, Goldstein & Finlay and Vincent J. Iuliano, for Defendants and Respondents.

Joanna G. Grabowski brought claims for medical malpractice against Kaiser Foundation Health Plan, Inc., Southern California Permanente Medical Group, and various associated physicians (collectively, Kaiser).[1]  The

---

[1]    The physicians are Barbie Lynn Norman, Walter D. Vasquez, John Stewart Kennedy, and Diana Cantu.

claims were heard by an arbitrator, Byron Berry, pursuant to a contractual arbitration agreement. After a contested hearing, the arbitrator awarded judgment in favor of Kaiser.

Grabowski petitioned the trial court to vacate the arbitration award. (Code Civ. Proc., § 1285; further statutory references are to the Code of Civil Procedure.) She alleged (1) the arbitrator committed misconduct, and revealed disqualifying bias, by engaging in an ex parte communication with Kaiser's counsel about Grabowski's self-represented status; (2) the arbitrator failed to disclose two matters involving Kaiser where he was selected as an arbitrator; and (3) the arbitrator improperly denied Grabowski's request for a continuance of the arbitration hearing. The trial court found that "the arbitrator's conduct did not rise to a level that substantially prejudiced [Grabowski's] rights" and therefore dismissed her petition.

Grabowski appeals the trial court's order dismissing her petition. She reasserts all three grounds for vacating the arbitration award. We agree the award should be vacated. The ex parte communication between the arbitrator and Kaiser's counsel was recorded by Grabowski's mother as part of her effort to document the arbitration hearing. The audio recording reveals comments by the arbitrator making light of Grabowski's self-representation and her inability, in the arbitrator's view, to effectively represent herself. The arbitrator volunteered these comments to Kaiser's counsel, ex parte, and they shared a hearty laugh about Grabowski's perceived shortcomings as an advocate.

The arbitrator committed misconduct on several levels. At least one requires vacating the arbitration award. A neutral arbitrator has a continuing duty to disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the neutral arbitrator would be

2

able to be impartial. The arbitrator's ex parte communication with Kaiser's counsel certainly qualifies. Because the arbitrator was aware of this communication and did not disclose it to Grabowski, the award must be vacated. (§ 1286.2, subd. (a)(6)(A).) We therefore reverse the order dismissing the petition with directions to grant the petition and vacate the arbitration award. In light of our conclusion, we need not consider the other grounds for vacating the award asserted by Grabowski.

FACTUAL AND PROCEDURAL BACKGROUND

In the underlying arbitration, Grabowski alleged that Kaiser negligently failed to diagnose a large, benign ovarian tumor. A Kaiser physician noted abnormalities in an early radiological scan and recommended follow-up, but this recommendation was not followed by Kaiser. Over the ensuing years, Grabowski suffered severe pain and discomfort, which she attributed to the growing tumor. The tumor was discovered when Grabowski was a teenager, after it had grown close to the size of a melon. Kaiser performed surgery to remove it. After the surgery, Grabowski continued to suffer severe pain. A different medical provider discovered that a portion of Grabowski's small intestine had become trapped when her surgical incision was closed.

Kaiser disputed that it should have diagnosed the tumor or that the tumor caused Grabowski's years-long symptoms. It contended Grabowski's pain was caused by other conditions.

The arbitration hearing was held over five days. The arbitrator heard percipient and expert testimony from both sides. Grabowski, now college-aged, represented herself. She was assisted by her mother. Kaiser was represented by an attorney, Vincent Iuliano, who is also co-counsel of record in this appeal.

3

In his award, the arbitrator found that Grabowski's tumor could not have been diagnosed until it became approximately the size of a melon. He understood Grabowski's expert to testify that Kaiser's physicians had individually met the requisite standard of care, but that Kaiser as a whole "breached its standard of care for not diagnosing the tumor earlier." The arbitrator rejected this theory, which he characterized as "an attempt to impose liability on Kaiser without finding fault or blame on any of the doctors" who treated Grabowski. The arbitrator noted that Grabowski had suffered severe pain for many years and continued to experience pain. He theorized that her pain was caused by "her intense engagement in athletics as a pitcher on her college softball teams."

The arbitrator concluded that Grabowski "failed to establish through expert testimony that the legal cause of her injuries was the failure of her Kaiser doctors to exercise the care and skill required under the circumstances." He therefore awarded judgment in favor of Kaiser.

Grabowski, represented by counsel, petitioned the trial court to vacate the award based on three primary grounds. She supported her petition with several declarations, documentary exhibits, and the audio recording of the arbitrator's ex parte communication with Kaiser's counsel.

First, Grabowski contended that the arbitrator committed misconduct during an early break in the arbitration proceedings by joking with Kaiser's counsel, ex parte, about Grabowski's self-representation. Grabowski's mother was recording the proceedings on her cell phone and had inadvertently left it going while she and Grabowski left the room. The unofficial transcript of the audio record submitted by Grabowski is reproduced below, with minor punctuation changes. Kaiser does not contest its general accuracy.

THE ARBITRATOR: "I've been doing this for a long time. This has been one of the bigger—bigger challenges, uh, because she doesn't have an attorney. It makes it just kinda awkward."

KAISER'S COUNSEL: "First time in 30 years in my practice . . . ."

THE ARBITRATOR: "For you?"

KAISER'S COUNSEL: " . . . I've never seen this before."

THE ARBITRATOR: "He'd, uh, everybody had representatives before?"

KAISER'S COUNSEL: "Absolutely."

THE ARBITRATOR: "And this is the wrong case. This is the wrong case. How can you not have an attorney? Even in some union cases and stuff that I deal with quite a bit. (Laughs.) Private cases, uh, or what have you, 'cause even with, uh, in union cases, uh, they have representatives who are not attorneys, but they know this stuff so well, they might, uh, you know, they're just as qualified as an attorney. So, she must have a representative that you can rely on, you know, to make sure that everything's done correctly. You know, but this is . . . . (Laughs.) [She] picked one of the toughest, factual cases I've ever dealt with to have somebody in [pro. per.] (Laughs.)"

Grabowski asserted that the arbitrator was " 'yukking it up' " with Kaiser's counsel and that his comments, especially his tone and laughter, showed his disrespect and disregard for Grabowski. She contended that the

5

ex parte communication showed bias, which was grounds for disqualification. (See §§ 170.1, subd. (a)(6), 1281.91, subd. (d).) She also argued that the communication showed corruption, fraud, or other undue means that required vacating the award. (See § 1286.2, subd. (a)(1)-(3).)

Second, Grabowski contended the arbitrator failed to disclose two matters involving Kaiser where he accepted appointment as an arbitrator. Grabowski maintained that she would have sought to disqualify the arbitrator if these two matters had been disclosed. She argued that the arbitrator's failure to disclose the two matters breached his ethical obligations and constituted a further ground for vacating the award. (See § 1286.2, subd. (a)(6)(A).)

Third, Grabowski contended the arbitrator failed to grant a continuance of the arbitration hearing, despite her showing of good cause to do so. Grabowski wanted more time to speak with her surgeon about treatment for spine conditions she believed were caused by Kaiser's negligence. Grabowski argued the arbitrator's failure to grant a continuance substantially prejudiced her rights and was therefore grounds for vacating the award as well. (See § 1286.2, subd. (a)(5).)

Kaiser opposed the petition to vacate. It contended that the recorded ex parte communication was not improper because it did not involve the merits of the arbitration. It maintained that the communication was not derogatory, did not reveal any bias, and did not constitute misconduct. Kaiser also contended that the arbitrator had served notice of the two additional matters involving Kaiser on Grabowski's prior attorney, while he was still representing Grabowski. Regarding the continuance, Kaiser argued that Grabowski did not show good cause for a continuance because she did not link her spine treatment to Kaiser's alleged negligence with competent

6

evidence. And, in any event, Grabowski had not shown that the arbitrator's failure to grant a continuance prejudiced her.

After hearing argument, the trial court issued a written statement of decision. It found that the ex parte communication was improper and unethical. The court wrote, "Though very short, this was not a general discussion about scheduling or administration. Rather, the conversation centered on [Grabowski]: Her pro per status, that the case is factually complicated and the potential for an adverse result as a consequence of lacking an attorney to assist her." However, the court found that Grabowski did not show how the communication "substantially prejudiced her rights" and she did not establish "a nexus between the communication and the award." The court also found that Grabowski had not shown the arbitrator failed to provide notice of the two additional Kaiser matters to her prior counsel. Finally, it found that Grabowski did not adequately justify her request for a continuance and the arbitrator did not abuse his discretion by denying it. Overall, Grabowski "fail[ed] to demonstrate 'substantial prejudice' or a nexus between the arbitrator's conduct and the arbitration award." The court therefore dismissed her petition. Grabowski appeals.[2]

## DISCUSSION

As noted, Grabowski contends the trial court erred by not vacating the arbitration award based on the arbitrator's ex parte communication with Kaiser's counsel. Among other things, Grabowski argues that the award must be vacated because the arbitrator failed to disclose the communication

---

[2] Grabowski represents herself in this appeal. "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.'" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

7

as required by statute and ethical rules.  (§ 1286.2, subd. (a)(6)(A).)  We agree.[3]

"The California Arbitration Act (§ 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in this state.' [Citation.]  The statutory scheme reflects a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citation.]  '[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final.' [Citation.]  [¶]  Generally, in the absence of a specific agreement by the parties to the contrary, a court may not review the merits of an arbitration award.  [Citation.]  Although the parties to an arbitration agreement accept some risk of an erroneous decision by the arbitrator, 'the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process.' " (*Haworth*, *supra*, 50 Cal.4th at p. 380.)

"The statutory scheme, in seeking to ensure that a neutral arbitrator serves as an impartial decision maker, requires the arbitrator to disclose to the parties any grounds for disqualification." (*Haworth*, *supra*, 50 Cal.4th at

---

[3]    In the trial court, Grabowski framed her contention somewhat differently, focusing on the misconduct of the arbitrator, rather than the failure to disclose.  To the extent this reframing constitutes a new theory presented for the first time on appeal, Kaiser has not objected to it and we exercise our discretion to allow it. (See *Ward v. Taggart* (1959) 51 Cal.2d 736, 742; *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.)  The material facts are undisputed.  And, as we explain, the disclosure requirement presents a mixed question of fact and law that is predominantly legal and subject to de novo review.  (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385-386 (*Haworth*).)

p. 381, fn. omitted.) If the arbitrator "failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware," the trial court *must* vacate the arbitration award. (§ 1286.2, subd. (a)(6)(A).) "Under the applicable California statute, an arbitrator's failure to make a required disclosure requires vacation of the award, without a showing of prejudice." (*Haworth*, at p. 394.) The statute "leaves no room for discretion." (*Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 845; accord, *Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 73 (*Benjamin*).)

"The arbitrator disclosure rules are strict and unforgiving. And for good reason. Although dispute resolution provider organizations may be in the business of justice, they are still in business. The public deserves and needs to know that the system of private justice that has taken over large portions of California law produces fair and just results from neutral decision makers." (*Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 931 (*Honeycutt*).)

Section 1281.9 requires that, "when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including certain enumerated matters. (§ 1281.9, subd. (a).) Among the enumerated matters is "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge." (§ 1281.9, subd. (a)(1).) Section 170.1, in turn, states that a judge "shall be disqualified" if, for any reason, "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).) "Bias or prejudice toward a

9

lawyer in the proceeding may be grounds for disqualification." (§ 170.1, subd. (a)(6)(B).)

Section 1281.85 imposes additional disclosure requirements. It states, "a person serving as a neutral arbitrator pursuant to an arbitration agreement shall comply with the ethics standards for arbitrators adopted by the Judicial Council pursuant to this section. . . . The standards shall address the disclosure of interests, relationships, or affiliations that may constitute conflicts of interest, including prior service as an arbitrator or other dispute resolution neutral entity, disqualifications, acceptance of gifts, and establishment of future professional relationships." (§ 1281.85, subd. (a).)

The Judicial Council subsequently adopted the Ethics Standards of Neutral Arbitrators in Contractual Arbitration. (*Honeycutt*, *supra*, 25 Cal.App.5th at p. 921.) California Rules of Court, Ethics Standard 7 addresses disclosure. Like its statutory counterpart, Ethics Standard 7 requires disclosure of "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial," including various enumerated matters. (Ethics Standards, std. 7(d).) Among the enumerated matters is any other matter that "[m]ight cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial[.]" (Ethics Standards, std. 7(d)(15)(A).)

The Ethics Standards impose a continuing duty of disclosure, "applying from service of the notice of the arbitrator's proposed nomination or appointment until the conclusion of the arbitration proceeding." (Ethics Standards, std. 7(f); see *Honeycutt*, *supra*, 25 Cal.App.5th at pp. 922-923.) If, after the time for initial disclosures has passed, "an arbitrator subsequently

10

becomes aware of a matter that must be disclosed . . . , the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter." (Ethics Standards, std. 7(c)(2).)

A federal appellate court has interpreted these statutes as imposing an *initial* duty of disclosure under section 1281.9 and a *continuing* duty of disclosure under section 1281.85 and the Ethics Standards. (See *Johnson v. Gruma Corp.* (9th Cir. 2010) 614 F.3d 1062, 1067-1068.) As relevant here, regardless of its source, the substantive duty to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" remains the same. (§ 1281.9, subd. (a); Ethics Standards, std. 7(d).)

" 'The "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather is a "well-informed, thoughtful observer." ' [Citation.] '[T]he partisan litigant emotionally involved in the controversy underlying the lawsuit is not the *disinterested objective observer* whose doubts concerning the judge's impartiality provide the governing standard.' " (*Haworth*, *supra*, 50 Cal.4th at p. 389.)

" 'Impartiality' entails the 'absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind.' [Citation.] In the context of judicial recusal, '[p]otential bias and prejudice must clearly be established by an objective standard.' " (*Haworth*, *supra*, 50 Cal.4th at p. 389.) " 'An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason*.' " (*Ibid*.) " 'Bias is defined as a mental [predilection] or prejudice; a leaning of the mind; "a predisposition to decide a cause or an issue in a certain way, which

11

does not leave the mind perfectly open to conviction." ' " (*Baxter v. Bock* (2016) 247 Cal.App.4th 775, 791.)

As noted, in order to prevail, Grabowski "is not required to prove that [the arbitrator] actually was influenced by bias." (*Haworth*, *supra*, 50 Cal.4th at p. 384.) Instead, the "sole issue" is whether the information was required to be disclosed. (*Ibid*.) Whether disclosure was required "is a mixed question of fact and law that should be reviewed de novo. The applicable rule provides an objective test by focusing on a hypothetical reasonable person's perception of bias. The question is not whether [the arbitrator] actually was biased or even whether he was likely to be impartial; those questions involve a subjective test that appropriately could be characterized as primarily factual. The question here is how an objective, reasonable person would view [the arbitrator's] ability to be impartial." (*Id.* at pp. 385-386.) Where, as here, there are no underlying material facts in dispute, our review of the court's order denying Grabowski's petition to vacate is de novo. (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1312.)

Initially, we note that the arbitrator's ex parte communication with Kaiser's counsel was not ethical. Kaiser does not dispute this conclusion. California Rules of Court, Ethics Standard 14, subdivision (a) provides, "An arbitrator must not initiate, permit, or consider any ex parte communications or consider other communications made to the arbitrator outside the presence of all of the parties concerning a pending or impending arbitration, except as permitted by this standard, by agreement of the parties, or by applicable law." Even where an ex parte communication is permitted, as for example about administrative matters, "the arbitrator must promptly inform the other parties of the communication and must give the other parties an opportunity

to respond before making any final determination concerning the matter discussed." (Ethics Standards, std. 14(b).) The ex parte communication here was not about "administrative matters" and was therefore prohibited by Ethics Standard 14.

Beyond its prohibited nature, we conclude a person aware of the ex parte communication could reasonably entertain a doubt that the arbitrator would be able to be impartial. The communication showed that the arbitrator had concluded that Grabowski could not be an effective advocate for herself. While this conclusion may not necessarily evince bias in and of itself, the arbitrator's decision to share his conclusion with Kaiser's counsel certainly does. The arbitrator plainly felt a connection to Kaiser's counsel, which made him comfortable enough to violate ethical rules and comment on Kaiser's opponent.

Moreover, the arbitrator's comments went far beyond the bare conclusion that Grabowski was ineffective. The audio recording, which reveals the arbitrator's tone and attitude, is striking. The arbitrator commiserated with Kaiser's counsel about their shared predicament (in his view) and shared a hearty laugh at Grabowski's expense. The arbitrator vividly expressed his incredulity that Grabowski was representing herself. The arbitrator also commented on the nature of the case itself, stating that Grabowski "picked one of the toughest, factual cases [the arbitrator had] ever dealt with to have somebody in [pro. per.]" His emotional response is apparent. The exact reason for the laughter is somewhat unclear, but it was clearly improper. Whether it was nervous laughter at the ethical transgression that had just occurred, disbelieving laughter that Grabowski was so unable to represent herself, or derisive laughter about Grabowski's

perceived incompetence, it highlights the reasons why the ex parte communication was improper.

A person aware of the ex parte communication could reasonably believe that the arbitrator did not take Grabowski seriously and could not maintain an open mind about her claims. He was biased against her for a particular reason, i.e., her self-represented status. A person aware of the ex parte communication could also reasonably believe that the arbitrator was partial to Kaiser's counsel, again for a specific reason. He was a fellow professional at the mercy (in the arbitrator's view) of Grabowski's lack of legal training and perceived incompetence.

Again, we emphasize that an arbitrator's private conclusion that an advocate is ineffective or incompetent does not necessarily create grounds for disqualification. The dispositive circumstances here are the arbitrator's decision to share this conclusion with Kaiser's counsel and the arbitrator's obviously emotional response to Grabowski's self-representation. A reasonable person could conclude that these were not the actions and statements of an impartial decision maker.

Because a reasonable person aware of the ex parte communication could reasonably entertain a doubt that the arbitrator would be able to be impartial, the arbitrator was required to disclose the communication within 10 calendar days. (Ethics Standards, std. 7(c)(2).) Grabowski would then have had the opportunity to disqualify the arbitrator. (See § 1281.91, subd. (d); Ethics Standards, std. 10(a)(3).) The arbitrator did not make the required disclosure. The statute therefore requires that the arbitration award be vacated, without any further showing. (§ 1286.2, subd. (a)(6)(A); see *Haworth*, *supra*, 50 Cal.4th at p. 394.)

14

In its appellate briefing, Kaiser did not address whether the arbitrator should have disclosed the ex parte communication or whether the arbitration award must be vacated based on his failure to do so. Instead, it argued only that the ex parte communication did not constitute corruption, fraud, or the use of undue means to obtain an arbitration award. At oral argument, Kaiser conceded the ex parte communication should have been disclosed, but it maintained that a further showing was required to vacate the award. In its briefing, Kaiser asserted that Grabowski must show " 'substantial prejudice or a nexus between the award and the alleged undue means used to attain it.' " Although this phrase appears in quotation marks in Kaiser's briefing, it does not appear in either of the authorities Kaiser cites: section 1286.2, subdivision (a), and *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 834 (*Pour Le Bebe*).

In any event, Kaiser does little to explain the basis for this legal standard or why it should be applied here. *Pour Le Bebe* references a "nexus" requirement in discussing a federal appellate decision: "As the Ninth Circuit said in *A.G. Edwards*, a court should not presume that perjured evidence or evidence procured by undue means had an impact on the arbitrators. Since 'arbitrators are not required to state the reasons for their decisions'; we 'presume[] the arbitrators took a permissible route to the award where one exists'; and the applicable statute provides for vacation of an award ' "procured by corruption, fraud, or undue means" ' [citation], the moving party needs to demonstrate a nexus between the award and the alleged undue means used to attain it." (*Pour Le Bebe, supra,* 112 Cal.App.4th at pp. 833-834, quoting *A.G. Edwards & Sons, Inc. v. McCollough* (9th Cir. 1992) 967 F.2d 1401, 1403.) Perjured evidence or evidence procured by undue means—through no fault of the arbitrator—is not at issue here.

*Pour Le Bebe* itself considered "whether 'other undue means' includes representation of the prevailing party by an attorney with a potential conflict of interest[.]" (*Pour Le Bebe, supra*, 112 Cal.App.4th at p. 826.) The losing party criticized the arbitration panel "for its limited inquiry into the conflict issue, but [it] highlight[ed] no aspect of the arbitrators' award that might have been impacted by any confidential information allegedly obtained" by the conflicted attorneys. (*Id*. at p. 835.) Because the losing party "failed to show by clear and convincing evidence that a conflict existed and that it had a substantial impact on the panel's decision," the court affirmed an order denying a petition to vacate. (*Id*. at p. 837.) A conflicted attorney—likewise not due to any fault of the arbitrator—is also not at issue here.

Kaiser also relies on *Pacific Vegetable Oil Corp. v. C.S.T., Ltd.* (1946) 29 Cal.2d 228, but it does not explain how that 70-year-old opinion relates to the current statutory scheme governing arbitration. *Pacific Vegetable* held that, in order to justify vacating an arbitration award, "the misconduct or error complained of, to whatever class it might belong, must be of such character that the rights of the party complaining were prejudiced thereby." (*Id*. at p. 240.) Here, to the extent this standard is relevant, Grabowski's rights *were* substantially prejudiced because she was unable to exercise her statutory right to disqualify an arbitrator that a reasonable person could doubt would be impartial. (See *Benjamin, supra*, 195 Cal.App.4th at p. 73.) We disagree with Kaiser's suggestion that her rights were not prejudiced because she was able to present her evidence to the arbitrator and the arbitrator allegedly "paid careful consideration to Grabowski's argument and evidence." Grabowski was entitled to the safeguards set out in the statutory scheme to ensure that she was informed of any potential for bias in the neutral arbitrator, so that her evidence and argument would be heard by an

impartial decision maker (or at least one whose potential biases were known). Because those safeguards were disregarded here, the entire arbitration is suspect.[4]

Kaiser asserts that the award should not be vacated because "even if the ex parte communication did not occur, the result would have been the same." Kaiser does not offer any support for such a legal standard in this context or any cogent argument why we should adopt it. Moreover, as evidence that the result would have been the same, Kaiser cites *the arbitrator's* factual findings. In a situation where the arbitrator's impartiality is at issue, such reliance is unpersuasive.

Although Kaiser did not raise them in its briefing, the trial court relied on several authorities that considered ex parte communications in other contexts. They are not applicable because they did not consider—and apparently did not involve—communications that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial, thereby imposing the requirement of disclosure. The focus in these authorities was whether the arbitrator's *receipt* of the communication exposed him to new evidence or arguments, to which the opposing party could not respond. (See *Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 740-741 [reversing an order confirming an arbitration award, based on ex parte confidential brief submitted to the arbitrator without notice to the opposing party; "Under the facts of this case, we conclude Baker Marquart had no meaningful or adequate opportunity to respond to the new claims

---

[4] For this reason, it could be argued that the arbitration award must be vacated for the additional reason that Grabowski's rights "were substantially prejudiced by [the] misconduct of a neutral arbitrator." (§ 1286.2, subd. (a)(3).)

17

Kantor raised for the first time in its confidential brief. This is neither fair nor proper."]; *Maaso v. Signer* (2012) 203 Cal.App.4th 362, 372 [affirming an order vacating an arbitration award, based on an ex parte letter brief submitted by a party arbitrator to the neutral arbitrator; "While it may be true that Maaso had an opportunity to present all of his evidence during the arbitration hearing, Maaso was prevented from presenting all of his *arguments* to the neutral arbitrator. As the plaintiff with the burden of proof on the issue of causation, Maaso did not have the last word because he did not have an opportunity to rebut the arguments made in Hammond's ex parte letter brief."]; *A.M. Classic Construction, Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1476 [affirming an order denying a petition to vacate, based on an ex parte communication informing the arbitrator that he had inadvertently failed to resolve one claim; "In the absence of a showing that the arbitrator was improperly influenced or actually considered evidence outside the original arbitration proceedings such that appellants needed a further opportunity to be heard on the stop notice claim, appellants cannot demonstrate that the amended award was procured by corruption, fraud, undue means, or misconduct of the arbitrator within the meaning of section 1286.2, subdivisions (a), (b) or (c)."].)

Unlike these cases, the issue here is not a party's (or a party arbitrator's) attempt to influence the neutral arbitrator through an ex parte communication. Instead, the issue is the arbitrator's own decision to engage in an ex parte communication, revealing significant potential bias. It is not primarily a matter of Grabowski's inability to respond; it is the arbitrator's failure to disclose a potentially disqualifying matter.

The trial court also cited *Cox v. Bonni* (2018) 30 Cal.App.5th 287. In *Cox*, there were two ex parte communications at issue: (1) a short

18

conversation between the arbitrator and defense counsel, during a different arbitration, about scheduling for the next week; and (2) an ex parte email from defense counsel to the arbitrator declining to seek costs in the arbitration under section 998.  (*Cox*, at pp. 296-297.)  The plaintiff argued that the arbitration award should be vacated based on, among other things, the arbitrator's failure to disclose the communications.  (*Id*. at pp. 309-310.)  On the first ex parte communication, *Cox* noted that plaintiff's counsel was actually aware of the communication before the arbitration hearing began.  (*Id*. at p. 310.)  By not objecting at that time, the plaintiff forfeited any challenge to the resulting award.  (*Id*. at p. 311.)  On the second ex parte communication, *Cox* noted that " 'not every item of information that is required to be disclosed under section 1281.9 constitutes a "ground for disqualification" as the term is used in section 1286.2.' "  (*Id*. at p. 310, quoting *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 842 (*Dornbirer*).)  *Cox* agreed that it would be "absurd" to vacate an arbitration award "based on minor omissions of details."  (*Cox*, at p. 310.)  It therefore concluded that "section 1286.2 cannot be read to require vacation of an award when an arbitrator fails to disclose an ex parte

communication waiving section 998 costs that did not prejudice the other party." (*Ibid.*)[5]

Here, unlike *Cox*, there is no issue of forfeiture. And the required disclosure, of a matter that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial, is a ground for disqualification. (See §§ 170.1, subd. (a)(6)(A)(iii), 1281.91, subd. (d).) The prejudice to Grabowski is apparent.

In sum, the arbitrator's ex parte communication with Kaiser's counsel could cause a person aware of the facts to reasonably entertain a doubt that

---

[5] In *Dornbirer*, this court considered a neutral arbitrator's disclosure statement, which disclosed a number of prior arbitrations where the defendant was a party, but which did not include certain information required by statute for each arbitration, such as the dates, the prevailing parties, the names of the attorneys, and the amount of any monetary damages awarded. (*Dornbirer*, *supra*, 166 Cal.App.4th at p. 840; see § 1281.9, subd. (a)(3)-(4).) The plaintiff argued that "each and every item of information that is required to be disclosed pursuant to section 1281.9 constitutes a 'ground for disqualification' " under section 1286.2, subd. (a)(6)(A). (*Dornbirer*, at p. 842.) This court disagreed. We held that "section 1286.2 cannot be read to nullify every arbitration award that stems from an arbitration in which the arbitrator failed to disclose all of the details of prior arbitrations, particularly where neither party challenged the arbitrator despite being aware that this information was not contained in the arbitrator's disclosure." (*Ibid.*) We explained, "When a party has been informed of the existence of a prior relationship between the arbitrator and another party or an attorney, that party is aware of facts that would put the party on notice of the potential for bias. If the arbitrator does not include additional information regarding such a relationship in the disclosure, a party has sufficient information to inquire of the arbitrator concerning that information. It is only when the arbitrator fails to acknowledge the existence of such a relationship that a party is without sufficient information to question the impartiality of the arbitrator." (*Ibid.*) *Dornbirer* does not apply here. Among other things, Grabowski was completely unaware of the facts that could lead to doubts about the arbitrator's impartiality.

the arbitrator would be able to be impartial. The arbitrator was therefore required to disclose the communication to Grabowski, so she could decide whether to seek his disqualification. (§ 1281.85; Ethics Standards, std. 7(d).) The arbitrator did not disclose the communication, and Grabowski was unable to exercise her right. The arbitrator's failure to disclose a ground for disqualification requires that the arbitration award be vacated without any further showing of prejudice. (§ 1286.2, subd. (a)(6)(A); *Haworth, supra*, 50 Cal.4th at p. 394.) "While that rule seems harsh, it is necessary to preserve the integrity of the arbitration process." (*Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1366; accord, *Honeycutt, supra*, 25 Cal.App.5th at pp. 931-932.)

## DISPOSITION

The order dismissing Grabowski's petition to vacate is reversed. On remand, the trial court is directed to grant Grabowski's petition, vacate the arbitration award, and proceed pursuant to Code of Civil Procedure section 1287. Grabowski is entitled to her costs on appeal.

GUERRERO, J.

WE CONCUR:

BENKE, Acting P. J.

DO, J.

21

Filed 5/10/21

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOANNA G. GRABOWSKI, | D076968 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2019-<br>00013115-CU-PA-CTL) |
| KAISER FOUNDATION HEALTH PLAN, INC., et al., | ORDER CERTIFYING<br>OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:

The opinion in this case filed April 19, 2021, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.


BENKE, Acting P. J.

Copies to:  All parties