Filed 1/15/26  Fishman v. Advisors CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JORDAN FISHMAN et al., | B334179 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 20STCV19615) |
| v. | |
| ADVISORS LLP et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, Douglas W. Stern and Stephen P. Pfahler, Judges.  Affirmed.

Yadegar, Minoofar & Soleymani, Navid Yadegar and Navid Soleymani for Plaintiffs and Respondents.

Miller Barondess and James Goldman for Defendants and Appellants.

_____

# INTRODUCTION

This matter involves an arbitration between David Joe and his former law firm, Advisors LLP, and its principals, Leigh Morris and Robert Plotkowski (collectively, Advisors). Joe, Jordan Fishman, and Tony Lee (collectively, Plaintiffs) were employed by Advisors and left to form their own law firm. When Advisors sought to enforce a noncompete clause against them, Plaintiffs sued it for damages and declaratory and injunctive relief, alleging they were misclassified as nonequity partners rather than as employees of Advisors. Advisors, in turn, filed a cross-complaint against Plaintiffs and moved to compel arbitration, which the trial court granted.

Three separate arbitration proceedings ensued with three different arbitrators. In the Fishman arbitration, which was completed first, neither side recovered on its claims. The Fishman arbitrator also ordered each side to bear its own attorney fees and costs. After the Fishman arbitrator issued his interim award, Advisors settled with Joe and Lee, agreeing to pay each of them $5,000 for dismissal of their respective claims. After the settlement, Joe and Lee each sought attorney fees and costs on the ground they were prevailing parties entitled to statutory fees under the Labor Code. Morris and Plotkowski also filed a motion for attorney fees and costs. The Lee arbitrator declined to award attorney fees to any party but awarded Lee $4,184.03 in costs. The Lee and Fishman arbitration awards are not at issue in this appeal, but form the backdrop for the two appeals relating to the Joe arbitration.

The Joe arbitrator found Joe to be the prevailing party and awarded him statutory attorney fees totaling $220,817 plus $5,024 in costs. Advisors moved to vacate the Joe attorney fees award in superior court. The court denied the motion to vacate

and issued a judgment confirming the award. The court subsequently denied Joe's motion seeking attorney fees he incurred in connection with the vacatur proceedings. Advisors appeals from the judgment confirming the arbitration award. Joe cross-appeals from the trial court's order denying his request for postarbitration attorney fees and costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs worked at Advisors as attorneys. They each became nonequity partners during their tenure at the firm and each signed a nonequity partnership agreement that contained noncompete and arbitration provisions. Morris and Plotkowski were the only equity partners at Advisors. In 2020, Plaintiffs resigned from Advisors to form their own law firm. Plaintiffs sued Advisors for declaratory and injunctive relief when Advisors attempted to enforce the noncompete provision against them, alleging they were misclassified and were actually employees of the firm. Plaintiffs also alleged Advisors failed to pay Plaintiffs for work performed, in violation of the Labor Code. Advisors filed a cross-complaint against Plaintiffs for breach of contract, breach of the duty of loyalty, conversion, false promise and declaratory relief. The superior court granted Advisors's petitions to compel arbitration over Plaintiffs' objections.

A.    *Arbitration Proceedings*
As stated, Plaintiffs each signed separate nonequity partnership agreements. The three agreements contained two different arbitration provisions. Joe's and Lee's arbitration provision stated: "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, enforcement,

3

interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in Los Angeles, California before one arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules.  Judgment on the award may be entered in any court having jurisdiction."

Fishman, on the other hand, signed an arbitration agreement that provided, in relevant part, that the parties agreed to submit to binding arbitration within one year from the date the dispute arose and "[b]inding arbitration conducted pursuant to this policy shall be held in Los Angeles, California, pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ('AAA'), before an arbitrator selected by both parties from the AAA Labor and Employment Arbitrators Panel."  As a result, AAA conducted Fishman's arbitration and JAMS conducted Joe's and Lee's arbitrations.

In 2021, Joe and Lee filed their arbitration demands with JAMS.  The demands stated each claimant "intend[ed] to challenge the jurisdiction of the arbitrator" and that the arbitration "must be governed by the JAMS Employment Arbitration Rules.  Claimant asserts he was an employee of Respondent and the claims are based on his non-waivable rights as an employee under the Labor Code."  JAMS notified the parties that its Comprehensive Arbitration Rules and Procedures (Comprehensive Rules) would apply but that according to its Policy on Employment Arbitration, Minimum Standards of Procedural Fairness (Minimum Standards), Joe and Lee, as

4

alleged employees, were only required to pay $400 of the filing fee and Advisors was required to pay the remaining arbitration fees and costs. Advisors did not object to application of the Minimum Standards.

On March 1, 2021, JAMS again notified the parties that: "Upon review of the Demand and accompanying documents JAMS has determined that JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness applies. Please carefully review the enclosed Minimum Standards as JAMS requires that the parties comply with them in order to proceed. The Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing. Any further issue about whether the Minimum Standards apply should be directed to the arbitrator once he or she is appointed. After hearing from the parties, if the arbitrator believes JAMS should revisit the issue, the arbitrator may advise JAMS accordingly. JAMS will then review the issue, taking the arbitrator's position into consideration, and will make a final determination." Advisors again did not object to the Minimum Standards.

On May 27, 2021, the parties appeared before the Joe arbitrator for a preliminary hearing. The arbitrator noted, "the parties could not agree on whether to use the JAMS Employment Arbitration Rules & Procedures or the JAMS Commercial Arbitration Rules & Procedures, and, at the request of Respondents' counsel, the Arbitrator agreed to make no decision on the matter until after the hearing on the Motion referenced below." The arbitrator stated in its report that "[a]rbitration proceedings will be governed by the JAMS Policy on Employment

5

Arbitration, Minimum Standards of Procedural Fairness, the Arbitration Agreement, and, to the extent not inconsistent therewith, the JAMS Rules to be selected at a later date." The arbitrator thus understood that Advisors objected only to which rules were to be applied but did not object to the application of the Minimum Standards.

On June 2, 2021, Plaintiffs' counsel informed Advisors that Plaintiffs would not challenge the arbitrators' jurisdiction "based on the determination by JAMS that they are not responsible for the arbitrator fees." Specifically, Joe stated that he decided to proceed with the arbitration "because (1) JAMS has decided to apply JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness, regarding the payment of the arbitrator fees, and (2) Respondents have agreed to permit discovery consistent with the California Discovery Act."

Advisors did not object to Joe's characterization of who would pay the arbitrator's fees or that the Minimum Standards applied, but requested Plaintiffs agree to resolve the claims in one arbitration to limit arbitration-related fees and avoid the possibility of inconsistent adjudications. Plaintiffs rejected the request. The parties all agreed, however, to coordinate discovery such that a deposition taken or other discovery produced in one arbitration could be used in the others.

AAA conducted Fishman's arbitration in April 2022. On July 25, 2022, the AAA arbitrator issued an interim arbitration award against Fishman as to his claims against Advisors and against Advisors as to their counterclaims against Fishman. The arbitrator later adopted the interim award as his final award. He declined to award any relief to any party. The Fishman

6

arbitrator further specified, "No party is awarded reasonable attorney's fees or litigation costs."

On July 18, 2022, JAMS demanded a "deposit" from Advisors for the Joe arbitrator's services in the amount of $93,600. It demanded a deposit in a similar amount for the Lee arbitrator's services. In an August 10, 2022 letter to JAMS regarding both the Lee and Joe arbitrations, Advisors's counsel complained about the burden of paying for the arbitration. Counsel suggested either JAMS consolidate the cases or "require Lee and Joe to pay for one-half of the arbitrator's fees in their cases." Advisors did not set out what authority would allow JAMS to require Lee or Joe to pay an equal share of the fees. The same day, Advisors moved to consolidate the Joe and Lee arbitrations.

Five days after their motion to consolidate, and before JAMS issued any ruling on it, Advisors offered to settle with Joe and Lee under Code of Civil Procedure section 998 for $5,000 each.[1] Advisors's counsel explained they were forced to choose between "two equally ruinous outcomes:" pay $172,000 in arbitration fees to recover nothing from Joe or Lee, similar to the outcome in the Fishman arbitration, or refuse to pay the fees and face the possibility of a default award.

Joe accepted Advisors's settlement offer the next day and gave notice to JAMS. As part of his notice, Joe "request[ed] that the arbitrator 'promptly render an award accordingly,' subject to post-award proceedings, including [Joe's] application for recovery of costs, including statutory attorneys' fees." Lee accepted an

_____

[1] All undesignated references are to the Code of Civil Procedure unless otherwise specified.

7

identical $5,000 settlement offer from Advisors and provided JAMS with an identical notice of settlement.

In an August 22, 2022 letter to JAMS, with a copy to counsel for Joe and Lee, Advisors's counsel retracted the settlement offer because Joe's and Lee's acceptance was "materially inconsistent with the offer." Advisors's counsel stated, "However, my clients are still willing to settle, but only on the terms stated in the offer. This means that the claims against *all* of my clients must be dismissed with prejudice; upon dismissal of all of Claimant's claims, one of my clients, Advisors, will pay Claimant $5,000. There will be no recovery against nor payment to be made by either of my other two clients, Morris and Plotkowski. The dismissal award cannot designate the prevailing party, much less authorize Claimant to recover his fees and costs. Any such determinations must be made via separate proceedings. In that regard, all of my clients' rights are reserved."

In written submissions to their respective arbitrators, Joe and Lee argued that, "Under well-established California law, when a section 998 offer is silent as to attorney's fees, the prevailing party has the right to recover available fees, even where the offer includes, as did this one, a provision for a 'full and complete satisfaction of all claims alleged by the parties.'" Joe and Lee also opposed consolidation, arguing it was moot due to the settlement.

JAMS denied the consolidation request on the ground Joe and Lee each had "*the right to participate in the selection of the arbitrator(s).*" JAMS noted that different arbitrators were selected in the separate arbitrations, and "[c]onsolidation of these matters would negate one Claimant's participation in the selection of the arbitrator and thus would undermine Standard

8

No. 2 of the [applicable rules]." JAMS also reminded the parties that it "advised the parties that the Minimum Standards 'will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing." JAMS explained, "Where the Minimum Standards apply, JAMS bills the company (employer or putative employer) for all fees above $400 irrespective of which set of arbitration rules apply (e.g., JAMS Comprehensive Arbitration Rules, JAMS Employment Arbitration Rules, etc.). Accordingly the arbitrator's determination regarding which arbitration rules apply will not affect JAMS billing in these matters. So long as the Minimum Standards apply, JAMS will bill Respondent for all fees above $400."

On August 22, 2022, the parties notified the arbitrator they had settled pursuant to section 998 but that there existed continuing disputes regarding whether attorney fees and costs were recoverable and whether the Joe and Lee matters should be consolidated.

Advisors argued the arbitrators lacked authority to issue an award of attorney fees or conduct further proceedings because the terms of the settlement called for an immediate dismissal with prejudice of the actions. According to Advisors, once the matter was dismissed, the arbitrator lacked jurisdiction to proceed. Advisors alternatively argued that if the arbitrator nevertheless decided to proceed, all parties—not just Joe and Lee—should be permitted to seek attorney fees and costs. Accordingly, on January 18, 2023, Morris and Plotkowski filed their own request with the arbitrator for attorney fees as the prevailing parties.

9

Lee filed a motion seeking $243,830.50 in attorney fees and $5,024 in costs. The arbitrator in Lee's case denied Lee's request for attorney fees, concluding that the Labor Code sections authorizing attorney fees required a finding that Lee was an employee. Because the matter had been settled and there was no such finding, Lee was not entitled to a fee award. Additionally, the arbitrator found neither party "prevailed" for purposes of a fee award. According to the arbitrator, Lee was not a prevailing party because the $5,000 settlement represented only 5 percent of the $100,000 in damages sought by Lee. The arbitrator, however, found Lee was entitled to his costs and ordered Advisors to pay $4,184.03 in costs in addition to the $5,000 section 998 settlement. Neither Lee nor Advisors challenge this award.

In February 2023, JAMS sought an additional $10,640 deposit in fees for the Joe arbitrator to address the mutual attorney fees and costs motions. It was then that Advisors requested "the Arbitrator reconsider the decision regarding the allocation of JAMS's fees or refer the issue to JAMS" and "reconsider its decision to apply its Minimum Standards in this case." JAMS declined to do so. JAMS explained the nonequity partnership agreement, including the arbitration clause, provided that it would be governed by California law. "In California, "'Employee" means any current employee, former employee, or applicant for employment. *The term includes any person who is, was, or who claims to have been misclassified as an independent contractor or otherwise improperly placed into a category other than employee or applicant for employment.'* Cal. Code of Civ. Proc. § 1280(f)." (Emphasis added.) Because Joe claimed he was an employee, JAMS relied on *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*) to

10

comply with California law on the financial burden imposed on employees in arbitration and thus, it applied the Minimum Standards.[2] JAMS stated it additionally relied on the Comprehensive Rules to determine the fees each party was to pay.

Subsequently, the arbitrator in Joe's case issued her final decision. The Joe arbitrator ordered Advisors to pay Joe $5,000 pursuant to the section 998 settlement agreement plus $220,817 in attorney fees and $5,024 in costs. The arbitrator's order stated: "Section 998 specifically applies to arbitration proceedings, and the law is clear that, if an accepted Section 998 offer is silent on costs, the prevailing party is entitled to seek to recover its costs, including attorneys' fees, if otherwise authorized by statute. See *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1154 ('*DeSaulles*'). By stipulating that the accepted offer was a Section 998 offer, Respondents gave the Arbitrator no discretion to refuse to consider the parties' requests for fees and costs."

The arbitrator determined Joe was the sole prevailing party because he obtained a monetary recovery and thus was entitled to costs under section 1032. The arbitrator further determined Joe was entitled to recover attorney fees as a part of

---

[2]    *Armendariz, supra,* 24 Cal.4th at page 110, concluded the imposition of substantial fees on an employee is contrary to public policy, and "is therefore grounds for invalidating or revoking an arbitration agreement and denying a petition to compel arbitration under Code of Civil Procedure sections 1281 and 1281.2."

11

costs pursuant to section 1033.5, because attorney fees were authorized under Labor Code section 218.5.[3]

B.      *The Motion To Vacate the Joe Arbitration Award*

Advisors moved to vacate the Joe arbitration award in the superior court.  Advisors argued JAMS exceeded its authority by applying the Minimum Standards rather than the Comprehensive Rules and by ignoring its own rules on consolidation, resulting in a "fundamentally unfair proceeding." Advisors also argued the arbitrator exceeded her authority when she conducted proceedings after the parties had settled, decided the attorney fees issue without conducting a hearing and without a contractual or statutory basis for fees, and failed to resolve

---

[3]      Section 1032, subdivision (b), provides:  "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."  Section 1033.5, subdivision (a)(10), in turn, provides that attorney fees authorized by statute, contract, or law are recoverable as costs under section 1032.

Labor Code section 218.5, subdivision (a), provides, in pertinent part:  "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.  However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith."  There is no dispute that Advisors and Plaintiffs sought attorney fees in their complaint and cross-complaint.  Advisors's position, however, was that Plaintiffs were not employees and not entitled to attorney fees under Labor Code section 218.5.

Morris and Plotkowski's motion for fees and costs. The superior court denied the motion to vacate and confirmed the arbitration award. The court observed "the main reason" for the motion to vacate is that Advisors "disagree with the arbitrator's decision." The court noted it had little authority to review the legal and factual decisions of the arbitrator. The superior court found the challenged rulings were determinations of law, which were not reviewable by the superior court even if erroneous. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 13 (*Moncharsh*).)

The superior court issued an order confirming the Joe arbitration award. It entered judgment in favor of Joe in the amount of $225,841 plus $6,842.98 in prejudgment interest. The judgment further stated, "Nothing herein precludes the parties, or any of them, from filing or opposing a motion for attorneys' fees and costs with respect to fees and costs, and to seek to amend the Judgment accordingly." Advisors timely appealed from the judgment.

Joe subsequently moved for $155,071.14 in postarbitration attorney fees on the ground he was entitled to the costs he incurred to oppose Advisors's motion to vacate the arbitration award. According to Joe, these costs included statutorily authorized attorney fees pursuant to Labor Code section 218.5. Advisors opposed.

The superior court denied Joe's motion, relying on *Ling v. P.F. Chang's China Bistro, Inc*. (2016) 245 Cal.App.4th 1242, 1263-1264 (*Ling*), disapproved on different grounds by *Naranjo v. Spectrum Security Services, Inc*. (2022) 13 Cal.5th 93, 117. *Ling* rejected the argument that Labor Code section 218.5 could be applied to award attorney fees in a special proceeding to confirm or vacate an arbitration award.

13

Joe timely appealed from the postjudgment order.

**DISCUSSION**

A.    *The Superior Court Properly Denied Advisors's Motion To Vacate the Arbitration Award*

1.    *Governing Law and Standard of Review*

"[T]he Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' [Citations.]  Consequently, courts will '"indulge every intendment to give effect to such proceedings."'" (*Moncharsh, supra,* 3 Cal.4th at p. 9.)  "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id.* at p. 10.)  In *Moncharsh,* the California Supreme Court held judicial review of an arbitral award is precluded even where there is an error of law or fact that is apparent on the face of an award causing substantial injustice.  (See *id.* at p. 28.)  "Thus, it is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed for errors of fact or law." (*Id.* at p. 11; *Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541 (*Ajida Technologies*) ["'It is well settled that the scope of judicial review of arbitration awards is extremely narrow.'"].)

The "narrow exceptions" to arbitral finality are codified in section 1286.2, subdivision (a).  (*Moncharsh, supra,* 3 Cal.4th at p. 11.)  As relevant here, section 1286.2, subdivisions (a)(1) and (a)(4), state: "the court shall vacate the award if the court determines any of the following:  [¶]  (1) The award was procured

14

by corruption, fraud or other undue means. [and] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted."

An award is procured by "undue means" under section 1286.2, subdivision (a)(1), where the arbitration was conducted so as to deprive a party of a fair hearing to his prejudice. (*Maaso v. Signer* (2012) 203 Cal.App.4th 362, 371-372 (*Maaso*).) Although section 1286.2 does not define "undue means," the court in *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 827 (*Pour Le Bebe*) explained that "[i]f the Legislature intended to permit an arbitration award to be vacated whenever the prevailing party engages in tactics that might in any way seem unfair, it would not have used the specific examples of fraud and corruption to describe the type of 'undue means' it had in mind." In *Maaso,* for example, the court affirmed the trial court's vacatur of an arbitration award because one party submitted an ex parte letter on a key undecided issue. (*Maaso,* at p. 375; see also *Pour Le Bebe,* at p. 827 [conflicted representation of a party by counsel may constitute undue means and a ground for vacating an arbitration award].) Additionally, "'the moving party needs to demonstrate a nexus between the award and the alleged undue means used to attain it.'" (*Maaso,* at p. 374.) That is, there is a causal limitation on this statutory ground for vacating an arbitration award.

In determining whether the arbitrators exceeded their authority within the meaning of section 1286.2, subdivision (a)(4), we give "substantial deference to the arbitrators' own assessments of their contractual authority." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362,

15

373 (*Advanced Micro Devices*).)  Arbitrators typically exceed their authority where they award a remedy that conflicts with the express terms of the arbitration provision.  For example, an arbitrator was without power to award an employer damages against a union where the collective bargaining agreement did not expressly provide for remedies against a union, but only arbitration of grievances between employers and employees.  (See *id.* at p. 382, citing to *Carpenter Local 1027 v. Lee Lumber & Bldg. Material* (7th Cir. 1993) 2 F.3d 796, 798-799.)  Thus, parties must set out limitations to an arbitrator's authority "explicitly and unambiguously in the arbitration clause" if they wish the arbitrator's remedial authority to be specially restricted.  (*Advanced Micro Devices,* at p. 383.)

""""On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard.  [Citations.]  To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues."""" (*Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973; accord, *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 383.)  Thus, "we review the superior court's order de novo, while the arbitrator's award is entitled to deferential review." (*Ajida Technologies, supra,* 87 Cal.App.4th at p. 541; see *Advanced Micro Devices, supra,* 9 Cal.4th at p. 376, fn. 9.)  Whether the arbitrator exceeded his or her authority is a legal question we review de novo.  (See *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 918, fn. 1.)

2. *The Arbitration Award Does Not Fall Within the Narrow Exceptions for Vacatur Specified in Section 1286.2*

Advisors contends the Joe arbitration award must be vacated based on two of the narrow exceptions listed in section 1286.2, subdivision (a). Advisors essentially argues that: (1) JAMS exceeded its authority by applying a different set of rules from what was specified in the arbitration agreement (§ 1286.2, subd. (a)(4)); (2) the arbitrator exceeded her authority when she awarded attorney fees and costs to Joe (*ibid.*); and (3) the arbitration award was procured by undue means (*id.,* subd. (a)(1)) because it was "unfair." Advisors also argues the arbitrator failed to resolve the material issue of whether Morris and Plotkowski were entitled to attorney fees (§ 1283.4). We conclude these arguments lack merit.

a. *Advisors waived its arguments relating to JAMS's application of the Minimum Standards*

First, Advisors contends JAMS exceeded its authority when it applied a different set of rules to the arbitration, the Minimum Standards, rather than what was specified in the arbitration provision, the Comprehensive Rules. The record shows that, by its conduct, Advisors consented and waived its objection to application of the Minimum Standards.

JAMS notified Advisors on March 1, 2021, that the "Minimum Standards will apply notwithstanding any contrary provisions in the parties' pre-dispute arbitration agreement. The parties' agreement to proceed constitutes agreement to the foregoing." JAMS directed the parties to take up "[a]ny further issue about whether the Minimum Standards apply" with the

17

arbitrator, who had not yet been appointed.  At the May 27, 2021 preliminary hearing with the arbitrator, however, the parties disputed only "whether to use the JAMS Employment Arbitration Rules & Procedures or the JAMS Commercial Arbitration Rules & Procedures," and not whether to use the Minimum Standards.

Thus, the arbitrator decided the proceedings would be governed by the Minimum Standards, the arbitration agreement, and "to the extent not inconsistent therewith, the JAMS Rules to be selected at a later date."  When Joe decided not to challenge the arbitrator's jurisdiction because, among other things, "JAMS has decided to apply the [Minimum Standards] regarding the payment of the arbitrator fees," Advisors did not object to application of the Minimum Standards or challenge Joe's assertion that he would not be responsible for the arbitrator's fees.  It was not until 2023, after the parties had settled, that the Lee arbitrator had made her decision, and that Advisors was faced with an additional $10,640 deposit to arbitrate the attorney fees issue in this matter that Advisors raised the matter.  Advisors then requested JAMS reconsider its decision to apply the Minimum Standards.  Under these circumstances, Advisors has waived its challenge to application of the Minimum Standards.  (See *Moncharsh, supra,* 3 Cal.4th at p. 31 [applying waiver principles in arbitration]; *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 85 [holding party may forfeit or waive deficiencies in the arbitrator's disclosures where the "attorneys had actual knowledge of a ground for disqualification before the arbitration commenced"]; *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 846 [same]; see JAMS Comprehensive Rule 27 ["If a Party becomes aware of a violation

18

of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship."].)

b.  *The arbitrator did not exceed her authority*

Although it now challenges the arbitrator's authority to decide postsettlement attorney fees and costs, at the outset, we note that Advisors submitted its own request for attorney fees and costs to the arbitrator (albeit as an alternative request).  In all events, Advisors now contends the arbitrator exceeded her authority by: (1) conducting proceedings even after the parties had settled and agreed to dismiss the action; (2) purportedly awarding fees incurred in other proceedings (i.e., the Fishman and Lee arbitrations and the prearbitration superior court proceedings); (3) awarding fees that were not statutorily authorized under section 998 or the Labor Code, and (4) purportedly issuing an award inconsistent with the terms of the settlement.

As to contention (1), the express terms of Joe's nonequity partnership agreement authorize the arbitrator to decide attorney fees and costs even after the parties' settlement.  The parties agreed to submit "[a]ny dispute, claim or controversy arising out of or relating to" the nonequity partnership agreement to arbitration.  Whether a party may recover attorney fees incurred as a result of a dispute over the terms of the nonequity partnership agreement falls within the scope of the arbitration agreement.  "Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the

19

contract, and award any relief rationally related to his or her factual findings and contractual interpretation." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182.) This principle extends specifically to attorney fees and costs: If the parties' agreement does "not limit the issues to be resolved through arbitration, the issue of [a party's] entitlement to attorney fees and costs, as requested in his complaint, [is] subject to determination in arbitration proceedings." (*Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, 706 (*Corona*); accord *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 358 (*Heimlich*).)[4]

Additionally, the express terms of the arbitration provision grant the arbitrator power to determine the scope of the arbitration, including whether she may conduct proceedings after the parties have settled. The arbitration agreement authorized the arbitrator to decide a "dispute, claim or controversy arising out of or relating to this Agreement or the breach, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate." With this expansive language, the parties permitted the arbitrator to decide whether the issue of statutory attorney fees fell within

---

[4]     We are not persuaded by Advisors's arguments based on *Thompson v. Jespersen* (1990) 222 Cal.App.3d 964, 968. That case held that an arbitrator exceeded her authority by awarding attorney fees without a contractual basis for it. *Thompson* is distinguishable because the arbitrator here found a statutory basis for the award, Labor Code section 218.5. Further, *Thompson* was decided before *Heimlich,* a California Supreme Court decision that permits an arbitrator to decide the issue of attorney fees and costs unless the arbitration agreement expressly states otherwise. (See *Heimlich, supra,* 7 Cal.5th at p. 358.)

"the scope . . . of this agreement to arbitrate." (See *Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 569 ["'[T]he scope of arbitration "is, of course, a matter of agreement between the parties."'"]; *Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1438 ["""""an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator himself decides which questions need to be determined"""""].) Given the terms of the arbitration provision, the arbitrator did not exceed her authority when she decided the attorney fees and costs issue after settlement.

We are not persuaded that the parties' settlement deprived the arbitrator of authority to conduct further proceedings. As stated, Advisors submitted its own request to the arbitrator for attorney fees and costs, which recognizes the arbitrator had authority to make such an award. Additionally, the cases Advisors cites do not support its position. *Cooper v. Lavely & Singer Profession Corp.* (2014) 230 Cal.App.4th 1, at pages 15 to 16, and *Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, at pages 95 to 96 hold that an arbitrator lacks jurisdiction to revise a final award to include attorney fees where he or she declined to award fees in the first instance. Here, the arbitrator did not revise her final award after it was issued. The final award included an award of attorney fees and costs.

After examining Advisors's remaining contentions—that the arbitrator (2) improperly awarded fees incurred in the other proceedings, (3) awarded fees that were not statutorily authorized by section 998 or the Labor Code, and (4) issued an award inconsistent with the terms of the settlement—we conclude that these are all purported errors of law or fact that are

21

unreviewable under *Moncharsh, supra,* 3 Cal.4th at page 11. Although Advisors attempts to recast its arguments as challenges to the arbitrator's authority, we are unpersuaded that they constitute more than unreviewable assertions of error. We have determined that under the express terms of the parties' arbitration provision the arbitrator had the authority to conduct postsettlement proceedings. Whether she made factual or legal errors in such proceedings is not a subject for our review under *Moncharsh*. "Having submitted the fees issue to arbitration, plaintiffs cannot maintain the arbitrators exceeded their powers . . . by deciding it, even if they decided it incorrectly." (*Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787.) "[A]rbitrators do not 'exceed[ ] their powers' . . . merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators." (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775.)

> c. *The arbitration award was not procured by undue means*

Advisors also contends the arbitration award was procured by "undue means" pursuant to section 1286.2, subdivision (a)(1), because (1) JAMS denied consolidation "based on inapplicable standards," (2) the arbitrator chose not to conduct a hearing on attorney fees and costs, and (3) the arbitrator purportedly based her final award on arguments that Advisors did not have an opportunity to address. These circumstances, whether considered separately or together, do not demonstrate the award was procured by undue means.

First, Advisors asserts its "primary concern" with the denial of its request to consolidate is that JAMS allowed Plaintiffs a third opportunity to seek the same attorney fees and costs that had previously been denied in the Fishman and Lee arbitrations, and it increased the costs to Advisors. Advisors additionally argues JAMS erred when it denied the request for consolidation because a JAMS attorney, not the arbitrator, decided the issue; Lee and Joe confirmed they were not employees when they agreed to dismiss their misclassification claims with prejudice, thus they were not entitled to attorney fees as employees under the Labor Code; and consolidation was permitted under the JAMS Employment Rules. Even if we accepted Advisors's multiple arguments of error, Advisors fails to demonstrate a causal nexus between JAMS's denial of its consolidation request and an unfair arbitration award in Joe's favor. (See *Maaso, supra,* 203 Cal.App.4th at p. 374 ["'[T]he moving party needs to demonstrate a nexus between the award and the alleged undue means used to attain it.'"].)

In *Maaso,* for example, the court concluded an ex parte letter on a material issue "caused the award to issue in favor of" one party. (*Maaso, supra,* 203 Cal.App.4th at p. 375.) Advisors makes no similar showing. Advisors does not, for example, contend the arbitrator was unfairly influenced by JAMS's decision not to consolidate or that denying consolidation otherwise led to the arbitrator issuing an improper award. Advisors instead primarily argues that the failure to consolidate increased their arbitration expenses and allowed Plaintiffs three separate opportunities to seek attorney fees and costs. Advisors cites no case authority supporting vacating an arbitration award where a purported employer is subject to increased expenses and

23

where three separate arbitrators decided the fees and costs issue in three separate arbitrations for three separate claimants.[5] Further, such consequences resulting from JAMS's denial of Advisors's request to consolidate do not amount to undue means. Indeed, the cost of arbitration did not appear to be out of proportion to a case in which the Plaintiffs each sought $100,000 in damages and Advisors's counterclaims against Plaintiffs were estimated to be $676,387.

Nor do Advisors establish that the lack of a hearing on the attorney fees and costs issue means the arbitrator's award was the result of undue means. According to Advisors, a "hearing is especially important for the party opposing a motion where the moving party includes new points or evidence in his or her reply, as was the case here, where Joe requested additional fees in his reply and the arbitrator granted it without affording the Advisors Parties an opportunity respond." The record establishes Advisors did not request oral argument and waived this issue. (See JAMS Comprehensive Rule 23 ["The parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree."]; see also JAMS Rule 22 ["The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set

---

[5]    Advisors seems to suggest that if the Joe and Lee matters had been consolidated, the result would have mirrored Lee's and Fishman's award, that is, neither side recovered its attorney fees. There is no indication, however, that the arbitrator for the consolidated action would have been Lee's arbitrator or would have decided the issue similarly. As a result, Advisors has failed to demonstrate prejudice arising from the failure to consolidate.

24

forth in these Rules.  The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so."].)

On May 12, 2023, Advisors's counsel acknowledged, "It is true that I did not request a hearing on or opportunity to brief the reasonableness of the 15 hours [the additional fees sought by Joe in his reply]."  Advisors also waived its challenge to the lack of a hearing in general.  This is because Advisors's counsel stated that the arbitrator determined "any motions for fees would be decided solely on the papers, i.e., without a hearing."  He then stated his "clients don't want to pay even [ ] more fees for an unauthorized hearing on issues over which the Arbitrator has no jurisdiction" and thus he requested the parties "split" the fees for deciding these motions.

In all events, "the arbitrator's obligation 'to hear evidence' does not mean that the evidence must be orally presented or that live testimony is required. . . .  An arbitrator 'hears' evidence by providing a 'legal hearing,' that is, by affording an 'opportunity to . . . present one's side of a case.' . . .  An arbitrator also 'hears' a matter by 'consider[ing] a motion upon presentation thereof by counsel.'" (*Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105.)

Finally, the record belies Advisors's assertion it was denied the opportunity to respond to three points purportedly raised by the arbitrator for the first time in her final award:  "(1) Joe was the prevailing party for both costs and attorneys' fees purposes because he obtained a 'net monetary recovery' pursuant to the settlement; and (2) even though Joe was not entitled to attorneys' fees under Labor Code sections 226, 1194, and 1198.5 because Joe was not an Advisors employee, he was entitled to attorneys' fees under [Labor Code] Section 218.5 because he *alleged* he was an

25

employee; and (3) Joe was entitled to 100% of what he requested, without making any allocation between his claims under Section 218.5 and his claims under Labor Code sections 226, 1194, and 1198.5 because Joe's claims under the Labor Code were all 'inextricably intertwined.'"

In Joe's motion for attorney fees and costs, he argued, "Joe is the prevailing party because he obtained 'a net monetary recovery.'" While Joe made the net monetary recovery argument in connection with his contention that he was entitled to costs, he later linked the basis for costs and attorney fees by arguing that "attorneys' fees are recoverable by the prevailing party as 'costs' if authorized by statute." Joe also argued he was entitled to attorney fees under Labor Code section 218.5. Lastly, Joe argued, "It would be improper to apportion fees by causes of action because the issues are inextricably intertwined." Contrary to Advisors's assertion, these issues were raised by Joe in his motion and Advisors had the opportunity to respond to all these arguments in their opposition.

d.    *The arbitrator decided all material issues*

Lastly, Advisors argues the arbitrator failed to decide whether Advisors's principals, Morris and Plotkowski, were entitled to attorney fees. Contrary to Advisors's contention, the final award stated, "only Claimant [Joe] is a prevailing party. Respondents are not prevailing parties." The final award also specified that "[a]ll claims not expressly granted herein are

26

hereby denied." Given this language in the final award, this argument lacks merit.[6]

B.      *The Superior Court Properly Denied Joe's Motion for Postarbitration Attorney Fees*

Joe appeals from the superior court's postjudgment order denying his motion for attorney fees. Joe contends he is the prevailing party on Advisors's motion to vacate the arbitration award, and thus he is entitled to a mandatory award of costs under section 1293.2, including statutory attorney fees under Labor Code section 218.5. "Generally, a trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is reviewed for abuse of discretion." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) But our review is de novo when the prevailing party determination is based on undisputed facts. (See *Khan v. Shim* (2016) 7 Cal.App.5th 49, 55; *Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 43-44.)

---

[6]      Joe has requested this court impose sanctions because Advisors filed a frivolous appeal. While we do not find merit in Advisors's arguments in its appeal, they are not so frivolous as to warrant the imposition of sanctions. "'[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.'" (*Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1194-1195 [denying motion for sanctions on appeal where issues were "arguable"], quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Joe's request for sanctions is denied.

Section 1293.2 provides, "[t]he court shall award costs upon any judicial proceeding under this title [governing arbitration] as provided in Chapter 6 (commencing with Section 1021) . . . of this code." Section 1033.5, subdivision (a)(10)(A), provides that items recoverable as costs include attorney fees when authorized by contract, statute, or law. "The award of costs pursuant to section 1293.2, including attorney fees when authorized by contract, is mandatory." (*Marcus & Millichap Real Estate Investment Brokerage Co. v. Woodman Investment Group* (2005) 129 Cal.App.4th 508, 513 (*Marcus & Millichap*); accord, *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 877-878 (*Cohen*); see *Corona, supra,* 107 Cal.App.4th at p. 707 ["[a] court must award costs in a judicial proceeding to confirm, correct or vacate an arbitration award"]; *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 260 (*Carole Ring*) ["the superior court was required to award [the prevailing party] reasonable attorney fees and costs for postarbitration judicial proceedings, pursuant to the statutory scheme governing arbitration"].)

Joe does not argue he is entitled to attorney fees based on the parties' contract. Instead, he contends the plain language of sections 1293.2 and 1033.5 entitle him to postarbitration attorney fees because attorney fees are authorized by statute pursuant to Labor Code section 218.5. Joe relies on the arbitrator's determination that he was entitled to attorney fees under Labor Code section 218.5.

Advisors, on the other hand, relies on *Ling, supra,* 245 Cal.App.4th at page 1263, which rejected the argument that statutory attorney fees under Labor Code section 218.5 could extend past a substantive Labor Code claim to include a petition

28

to vacate the claim in superior court.  In *Ling,* the plaintiff sued her former employer for unpaid overtime wages, waiting time penalties, and failure to provide meal and rest periods.  The matter was sent to arbitration, and the arbitrator found the employer was the prevailing party in all but a "minor" issue relating to missed meal periods during the plaintiff's training.  (*Ling, supra,* 245 Cal.App.4th at p. 1248.)  The arbitrator awarded the employer attorney fees as the prevailing party and denied the plaintiff's attorney fees motion.  (*Ibid.*)

The plaintiff moved to vacate the arbitration award.  The superior court granted the plaintiff's motion in part, concluding she was entitled to attorney fees incurred in the arbitration because she prevailed on the missed meal periods issue.  It remanded the matter to the arbitrator to determine the amount of fees.  While the matter was pending in arbitration, the California Supreme Court held that attorney fees were not recoverable for missed meal period claims under the applicable Labor Code provision.  (See *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1245.)  Relying on *Kirby*, the arbitrator again denied the plaintiff's request for attorney fees, and the plaintiff moved to vacate the arbitrator's decision in superior court.  The court denied the motion to vacate.  The plaintiff then moved for attorney fees incurred in the first and second motions to vacate.  The court granted the motion in part, awarding attorney fees related to the first petition (in which the plaintiff prevailed) but denying fees related to the second petition.  (*Id.* at p. 1251.)  The employer appealed from that order.

As here, the *Ling* plaintiff argued she was entitled to attorney fees as a matter of law under Labor Code section 218.5 because she had prevailed on her Labor Code meal periods claim.

(*Ling, supra,* 245 Cal.App.4th at p. 1263.)  The court of appeal rejected that argument, reasoning, "the arbitration agreement does not provide a basis for the court's fee award.  It provides that each party pay its own attorney fees 'subject to any remedies to which that party may later be entitled under applicable law.'  Code of Civil Procedure section 1293.2 provides that the prevailing party on a motion to confirm, correct, or vacate an arbitration petition is entitled to a mandatory award of costs, but no applicable law provides for an award of attorney fees.  Plaintiff argues she is entitled to attorney fees under [Labor Code] section 218.5, but she cites no authority supporting the notion that a statutory attorney fees provision applying to a substantive claim extends to a petition to vacate an arbitration award resolving that claim, and we know of none." (*Ibid.*)

Similarly, in *Villinger/Nicholls Development Co. v. Meleyco* (1995) 31 Cal.App.4th 321, 327-328 (*Villinger*), the court held a statute authorizing attorney fees did not extend to a proceeding to confirm an arbitration award.  There, a dispute over a remodeling contract was sent to arbitration.  The arbitrator found in favor of the contractors.  (*Id.* at p. 325.)  The contractors moved to confirm the award and requested costs, "'including reasonable attorney's fees, necessarily incurred in connection with this petition.'" (*Id.* at p. 326.)  While the remodeling contract did not contain an attorney fees provision, the contractors relied on former Civil Code section 3176, which provided in pertinent part, "'In any action against an owner or construction lender to enforce payment of a claim stated in a bonded stop notice, the prevailing party shall be entitled to collect from the party held liable by the court for payment of the

claim, reasonable attorney's fees in addition to other costs and in addition to any liability for damages.'" (*Ibid.*)

*Villinger* observed, "Judicial remedies are divided into two classes: actions and special proceedings. (Code Civ. Proc., § 21.) 'Hearings to confirm an arbitration award are "special proceedings" as contrasted with "actions." ([Code Civ. Proc.,] §§ 22 and 23.)'" (*Villinger, supra,* 31 Cal.App.4th at p. 327, fn. omitted; see *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 784 [discussing the difference between actions and special proceedings].) *Villinger* concluded a petition to confirm an arbitration award was not an "action" within the meaning of former Civil Code section 3176. It reasoned, "Absent evidence of the Legislature's intent to award attorney fees to the prevailing party in an arbitration or special proceeding to confirm the arbitration award arising from the same claim as stated in a bonded stop notice, we decline to interpret 'action' as used in [former] Civil Code section 3176 broadly to include special proceedings." (*Villinger,* at p. 329.)

Here*,* it is undisputed the parties' contract does not contain an attorney fees provision. Accordingly, to obtain attorney fees relating to the vacatur proceedings under section 1293.2, Joe must rely on a "statute or law" authorizing such fees. Joe asserts Labor Code section 218.5 provides the necessary statutory authority. *Ling* holds otherwise, and *Villinger* supports *Ling's* holding. Joe does not cite any authority contrary to *Ling* or *Villinger.*

Further, although the arbitrator determined Joe was entitled to attorney fees under Labor Code section 218.5 as to his substantive claims, we are not bound by the arbitrator's decision in judicial proceedings determining whether Joe is entitled to

31

fees. Like former Civil Code section 3176, which authorizes attorney fees for an "action," Labor Code section 218.5 also authorizes attorney fees "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions." Under *Ling* and *Villinger,* Labor Code section 218.5 does not extend to a special proceeding to vacate an arbitration award.

We are not persuaded by the cases cited by Joe to argue the superior court was required to award reasonable attorney fees and costs to the prevailing party in a postarbitration proceeding under section 1293.2. (See *Cohen, supra,* 31 Cal.App.5th at pp. 878-879; *Marcus & Millichap, supra,* 129 Cal.App.4th at p. 513; *Carole Ring, supra,* 87 Cal.App.4th at p. 260.) Each of those cases was based on a contractual attorney fees provision, which is not present here. Nor are we persuaded to depart from settled case law to fulfill the public policy objectives Joe contends are thwarted by *Ling.*

## DISPOSITION

The judgment and postjudgment orders are both affirmed. The parties are to bear their own costs on appeal.


MARTINEZ, P. J.


We concur:



FEUER, J.                                    STONE, J.


32